## CLEVELAND CONSTRUCTION, INC., Appellant,

v.

## LEVCO CONSTRUCTION, INC., Appellee.

No. 01–11–00530–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 26, 2012.

---

Joshua Nathaniel Bowlin, Jennifer Roberson Bickley, Kevin D. Jewell, Chamberlain Hrdlicka White Williams, Judd M. Treeman, Seyfarth Shaw LLP, Houston, TX, for Appellant.

Gregory N. Jones, Jennifer Lynn Hebert, Matthew S. Veech, Boyar & Miller, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Cleveland Construction, Inc. ("CCI"), appeals the trial court's denial of its motion to compel arbitration. In two issues, CCI argues that the trial court erroneously denied its motion to compel arbitration because (1) the Federal Arbitration Act ("FAA") applies, the arbitration provision is valid, and the claim is within the scope of the arbitration provision, and (2) the law favors arbitration and the FAA preempts conflicting state law.

We reverse and remand.

## Background

Whole Foods Market, Inc. ("Whole Foods") hired CCI to serve as general contractor to construct a store in Houston, Texas ("the Project"). The contract between Whole Foods and CCI ("the Whole Foods Contract") allowed CCI to hire subcontractors.

CCI contracted with appellee, Levco Construction, Inc. ("Levco"), as a subcontractor, to perform certain tasks related to the construction, including excavating, grading, digging for laying utilities, paving, and preparing the foundation ("the Construction Contract"). The Construction Contract contained the following arbitration provision:

*Article 30. DISPUTE RESOLUTION*

. . . .

30.3 Any controversy or claims of CCI against Subcontractor [Levco] or Subcontractor against CCI shall, at the option of CCI, be resolved by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association in effect on the date on which the demand for arbitration is made. Any such arbitration shall be held in Lake County, Ohio. Any award arising out of such arbitration may be entered by any court having jurisdiction. . . .

Levco also obtained a surety bond ("the Bond") from Intervener, Insurors Indemnity Company ("the Surety"). Both the Whole Foods Contract and the Bond issued by the Surety provided that disputes were to be resolved in a court in the county in which the Project was built, Harris County, Texas. Specifically, the Bond provided, in part:

§ 4 When the Owner [CCI] has satisfied the conditions of Section 3 [requiring notice of Contractor Default and other conditions precedent triggering the

Surety's obligations under the Bond], the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 4.1 Arrange for the Contractor [Levco], with consent of the Owner, to perform and complete the Construction Contract; or

§ 4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

§ 4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract ... and to pay to the Owner the amount of damages as described in Section 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

§ 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor with reasonable promptness under the circumstance....

....

§ 6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Section 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract....

....

§ 9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first....

After Levco had partially performed under the Construction Contract, disputes arose between CCI and Levco concerning the Project, and on, January 17, 2011, CCI sent a letter to Levco informing it that "CCI elects to terminate its Agreement with Levco Construction." The work was subsequently completed by Levco under the provisions of the Bond.

On April 14, 2011, Levco filed suit against CCI and Whole Foods in Texas state court. According to its pleadings, Levco discovered upon beginning the work that CCI and Whole Foods had failed to obtain all necessary construction permits and that the building design and plans were not complete, so Levco was required to make numerous changes. Levco made multiple requests to change the scope of the contracted-for work to include the new work, including requests for additional time and compensation. Levco alleges that CCI and Whole Foods refused to consent to the changes Levco sought. Levco also alleges that CCI maintained unreasonable deadlines, interfered with Levco's work under the Construction Contract, failed to pay Levco for work it had completed from July 2010 to April 2011, and wrongfully terminated the contract in January 2011. Thus, Levco was unable to pay its subcontractors, resulting in liens being filed against the Project.

Levco alleges that CCI eventually reinstated Levco as a subcontractor pursuant to section 4.1 of the Bond, but CCI "continued to refuse to reinstate the [Construction Contract] itself." Levco claims that because CCI refused to reinstate the Construction Contract between them it was left in the position of "working essentially as a subcontractor for the [S]urety" under the terms of the Bond. Specifically,

Levco alleges that, in its role as the issuer of the Bond, the Surety mandated that Levco be allowed to continue to work on the Project, as provided in section 4.1 of the Bond, and made an agreement with CCI regarding payment of Levco and Levco's subcontractors, as provided in section 6 of the Bond. Levco alleges that the Surety and CCI agreed that the Surety would pay Levco's subcontractors money owed them in exchange for CCI releasing the corresponding payments it owed Levco once the subcontractors released their liens on the Project. Levco states that the Surety complied with this agreement and paid Levco's subcontractors, but that CCI did not comply and release the money it owed Levco or Levco's subcontractors. Nor did CCI reinstate the Construction Contract it had terminated. Levco contends that CCI and Whole Foods are "now improperly withholding more than $500,000 in funds owed to Levco."

Levco claims that CCI breached its agreement with Levco; that CCI and Whole Foods breached their duties to perform with care in accordance with the terms of the Construction Contract (as provided in both the Construction Contract and section 6 of the Bond) and the Whole Foods Contract and to cooperate in performance of the contracts; that CCI and Whole Foods owe it damages under theories of quantum meruit, unjust enrichment, and promissory estoppel; that CCI and Whole Foods violated Property Code section 28.001; and that CCI misapplied trust funds received from Whole Foods for payment of obligations under the Construction Contract and the Bond.

In addition, Levco sought a declaratory judgment that the arbitration clause in the Construction Contract is invalid and does not require arbitration because it is illusory, or, alternatively, that the provision in the Construction Contract requiring arbitration in Ohio is void because it contra-

venes Texas law in that "it purports to require a subcontractor to a contract involving the improvement or real property in Texas to submit to arbitration in a state other than Texas." Finally, Levco sought attorney's fees pursuant to Civil Practice and Remedies Code section 37.009 and chapter 38 and Property Code section 28.005, and it sought a temporary restraining order or temporary injunction prohibiting CCI and Whole Foods from releasing any funds related to the Project.

On April 14, the trial court granted Levco's temporary restraining order until April 29, 2011, and it set a hearing on Levco's request for a temporary injunction for April 29.

CCI filed an arbitration demand with the American Arbitration Association, alleging, under "nature of the dispute,"

> Respondent [Levco] is a subcontractor to Claimant [CCI] on the construction of a Whole Foods Market located in Houston, Texas ("Project"). Levco breached the subcontract and was terminated by CCI. Levco was bonded on the Project and the surety, Insurer's Indemnity Company utilized its option to have Levco complete the work on the Project; however, further breaches have occurred [and] CCI has been damaged by Levco's breach in [an] amount not yet fully determined but in [an] amount that CCI does not anticipate will exceed $150,000.

CCI requested that Lake County, Ohio be the arbitration locale.

On April 26, 2011, Levco filed an emergency motion to stay the arbitration proceeding.

On May 11, 2011, CCI answered Levco's suit with a general denial and asserted the affirmative defenses that a valid contract precluded Levco's quantum meruit claims, that CCI had paid Levco under the Con-

struction Contract, that Levco failed to meet all conditions precedent to payment under the Construction Contract, that CCI was entitled to the defenses of "excuse" and "justification," and that Levco lacked standing to assert its claims against CCI, had failed to state a claim for which relief can be granted, and was the first to breach the Construction Contract.

CCI alleged that Levco defaulted under the Construction Contract within a month after beginning the Project and that CCI issued notices of default on multiple dates following. CCI attached several of these notices to its answer. It also alleged that "Levco was upside down on the Project from the beginning and failed to pay its vendors and suppliers in a timely manner" and that "Levco's financial mismanagement caused numerous, unnecessary liens on the Project." CCI also attached several notices from "lower tier" subcontractors claiming they had not been paid by Levco. This led CCI to terminate Levco from the Project in January 2011 and to notify the Surety of Levco's breach.

CCI alleged that the Surety elected its option under the terms of the Bond to arrange "for Levco to perform and complete its obligations under the Contract." CCI argues that "[b]y selecting this option, [the Surety] undertook Levco's obligations under the Contract and CCI was to reciprocally perform its obligations directly to [the Surety] . . . and, as required by the Performance Bond, any money currently owed by CCI must be paid to [the Surety], not Levco." CCI also alleged that it agreed to 26 of the 31 change orders submitted by Levco and that it offered to pay the Surety the outstanding pay applications if Levco would execute a release, which Levco refused to do.

CCI also responded to Levco's application for a temporary injunction and moved to compel arbitration and to stay the trial court proceedings, or alternatively, to dismiss the trial court proceedings.

In its motion to compel arbitration, also filed on May 11, CCI argued that the arbitration clause between it and Levco was valid, that it was not illusory or in contravention of Texas state law, and that the dispute at issue fell within the scope of the agreement. CCI also argued that the FAA preempts Levco's claim based on Business and Commerce Code section 272.001. Levco responded that the arbitration clause was invalid and illusory and that it failed to survive termination of the Construction Contract.

On May 26, 2011, the Surety filed a plea in intervention, arguing that "mandatory jurisdiction and venue with respect to the claims and causes of action asserted by Intervenor against [CCI] herein properly lie in this Court pursuant to the express provisions of § 9" of the Bond. It likewise alleged that, after CCI terminated the Contract between itself and Levco, CCI called upon it, as Surety, to complete Levco's obligations pursuant to the Bond. The Surety alleged that it elected to utilize Levco to continue performance of the subcontract work with the Surety itself advancing Levco's payroll and certain of its overhead expenses, as provided in section 4.1 of the Bond. In exchange, CCI agreed to pay to the Surety "all remaining monies due and owing or to become due and owing under the Levco Subcontract Agreement," in accordance with section 6 of the Bond.

The Surety alleged that CCI subsequently breached this agreement by failing to make those payments. It alleged that it had expended $983,790.49 and that "under the express provisions of Levco's General Indemnity Agreement and pursuant to [its] common law rights to indemnity and equitable subrogation, [the Surety] has a superior lien upon and is entitled to payment directly from CCI on any and all

contract sums or compensatory damages adjudged by this Court to be due and owing ... to Levco and/or [the Surety]."

On May 27, 2011, the trial court granted Levco's emergency motion to stay the arbitration proceeding initiated by CCI. This appeal followed.

### Analysis

CCI argues that the trial court erred in denying its motion to compel arbitration because the FAA applies, the arbitration provision in the Construction Contract is valid, and the claims in the case are within the scope of the arbitration provision. It also argues that the FAA preempts any conflicting state law. Levco, however, argues that the arbitration provision in the Construction Contract is illusory and, therefore, unenforceable as a matter of law; that the Construction Contract was terminated and the arbitration provision does not contain a survival clause that would allow it to survive termination of the contract; and that Business and Commerce Code section 272.001 is not preempted by the FAA because it restricts venue, rather than restricting a party's right to arbitrate.

### A. Jurisdiction

We first address our jurisdiction to review the trial court's order staying the arbitration proceedings. Civil Practice and Remedies Code section 51.016 provides:

> In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

TEX. CIV. PRAC. & REM.CODE ANN. § 51.016 (Vernon Supp. 2011). Section 16 of the FAA, "Appeals," provides:

> (a) An appeal may be taken from—
> (1) an order—
> (A) refusing a stay of any action under section 3 of this title [stay of trial proceedings where issue therein is referable to arbitration],
> (B) denying a petition under section 4 of this title to order arbitration to proceed, [or]
> (C) denying an application under section 206 of this title to compel arbitration....
> (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or
> (3) a final decision with respect to an arbitration that is subject to this title.
> (b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—
> (1) granting a stay of any action under section 3 of this title;
> (2) directing arbitration to proceed under section 4 of this title;
> (3) compelling arbitration under section 206 of this title; or
> (4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16 (2006).

Thus, an interlocutory appeal is permitted in this case only if it would be permitted under the same circumstances under section 16 of the FAA in federal court. *See CMH Homes v. Perez*, 340 S.W.3d 444, 448–49 (Tex.2011). The United States Supreme Court has held that the FAA "generally permits immediate appeal of orders hostile to arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S.

79, 86, 121 S.Ct. 513, 519, 148 L.Ed.2d 373 (2000). Several circuit courts have held that the FAA permits interlocutory review of an order staying arbitration. *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2nd Cir.2006) (holding FAA subsection 16(a)(2) permits interlocutory review of stay of arbitration); *KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 47 (1st Cir.1999) (holding that order staying pending arbitration was immediately appealable as injunction under both 28 U.S.C. § 1292(a)(1) and FAA section 16(a)(2)); *Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 712 (9th Cir.1992) (holding it had jurisdiction over district court's order staying arbitration pursuant to section 16(a)(2) allowing appeal from an order enjoining arbitration). Furthermore, the Fifth Circuit has held that an order granting a stay of arbitration is appealable pursuant to 28 U.S.C. § 1292(a)(1), governing appeals of interlocutory orders involving injunctions generally. *See Tai Ping Ins. Co. v. M/V Warschau*, 731 F.2d 1141, 1143 (5th Cir.1984).

## B. Standard of Review

Prior to September 1, 2009, an order denying a motion to compel arbitration under the FAA was reviewed in a mandamus proceeding using an abuse of discretion standard. *In re Merrill Lynch & Co.*, 315 S.W.3d 888, 890–91 & n. 3 (Tex.2010) (orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272–73 (Tex.1992) (orig. proceeding). The Texas Supreme Court held that the abuse of discretion standard, as applied to such orders, required reviewing courts to defer to the trial court's factual determinations if they are supported by the evidence and to review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex.2009) (orig. proceeding). This is the same standard by which we review interlocutory appeals of orders denying motions to compel arbitration under the Texas Arbitration Act ("TAA"). *See McReynolds v. Elston*, 222 S.W.3d 731, 739 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (holding, under TAA, "we review factual conclusions under a legal sufficiency or 'no evidence' standard and legal conclusions de novo"); *see also In re Trammell*, 246 S.W.3d 815, 820 (Tex. App.-Dallas 2008, no pet.) (orig. proceeding) (holding same).

Civil Practice and Remedies Code section 51.016 now permits an order denying a motion to compel arbitration under the FAA to be reviewed via interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.016. Neither this Court nor the Texas Supreme Court has addressed the appropriate standard of review for such interlocutory appeals. However, various courts of appeals have considered this issue and held that interlocutory appeals of orders denying motions to compel arbitration should be reviewed under the abuse of discretion standard, in which we defer to the trial court's factual determinations and review questions of law de novo. *See Garcia v. Huerta*, 340 S.W.3d 864, 868–69 (Tex.App.-San Antonio 2011, pet. filed); *SEB, Inc. v. Campbell*, No. 03–10–00375–CV, 2011 WL 749292, at *2 (Tex.App.-Austin Mar. 2, 2011, no pet.) (mem. op.); *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex.App.-Dallas 2010, no pet.); *see also Torster v. Panda Energy Mgmt., LP*, No. 07–10–0442–CV, 2011 WL 780522, at *2 (Tex.App.-Amarillo Mar. 7, 2011, pet. filed) (mem. op) (citing *Sidley, Austin, Brown & Wood* in holding that whether trial court erred in denying motion to compel arbitration "depends on whether it abused its discretion").

■ Thus, in reviewing an order denying a motion to compel arbitration under the FAA, we give deference to the trial

court's factual determinations that are supported by evidence and we review de novo its legal conclusions.

 A party seeking to compel arbitration under the FAA must establish that there is a valid arbitration agreement and that the claims raised fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the trial court finds a valid agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *J.M. Davidson*, 128 S.W.3d at 227. The trial court's determination as to the validity of an arbitration agreement is a legal determination that we review de novo. *Id.*

 Under the FAA, ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Kellogg Brown & Root*, 166 S.W.3d at 738. Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson*, 128 S.W.3d at 227. Because arbitration is contractual in nature, the FAA generally does not require parties to arbitrate when they have not agreed to do so. *Kellogg Brown & Root*, 166 S.W.3d at 738 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478–79, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)).

## C. Determination of Existence of Valid Agreement to Arbitrate

CCI argues that the arbitration clause in the Construction Contract is a valid and binding agreement to arbitrate. Levco, however, argues that it is illusory and unenforceable as a matter of law. Levco also argues that, even if the agreement to arbitrate in the Construction Contract is not illusory, the arbitration agreement in the Construction Contract does not contain a survival clause that would allow it to survive termination of the contract.[1]

 In determining the validity of agreements to arbitrate that are subject to the FAA, we generally apply ordinary state contract law principles. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex.2006) (orig. proceeding). The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction

---

1. Levco's appellate brief mentions in passing that the dispute resolution provision in the Bond conflicts with the terms of the Construction Contract. However, it cites no authority and provides no legal analysis on this issue. Therefore, to the extent Levco is attempting to argue that the terms of the Bond prevent arbitration of its dispute with CCI over the claims arising from the Construction Contract, that issue is waived for lack of briefing. *See* TEX.R.APP. P. 38.1(i) (requiring that appellate "brief must contain a clear and concise argument for the contention made, with appropriate citations to authorities" for party to assert issue on appeal); *Brown v. Hearthwood II Owners Ass'n.*, 201 S.W.3d 153, 161 (Tex. App.-Houston [14th Dist.] 2006, pet. denied) (holding argument can be waived for failure to adequately brief).

Levco also argues that the Surety is a necessary party to any arbitration proceeding. However, the Surety is not before this Court as a party to the appeal, nor was it a party to the motion to stay arbitration in the trial court. Thus, we are not called upon to consider the Surety's obligations or rights regarding arbitration.

will be considered together, even if they were executed at different times and do not expressly refer to one another." *De-Witt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex.1999); *IP Petroleum Co. v. Wevanco Energy, L.L.C.*, 116 S.W.3d 888, 889 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) ("Instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times.") (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000)); *see also DeClaire v. G & B McIntosh Family Ltd. P'Ship*, 260 S.W.3d 34, 44 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (holding that contract can be effective if signed by only one party if other party accepts by his acts, conduct, or acquiescence in the terms of the contract).

CCI presented the Construction Contract, which provides, in part:

> Any controversy or claims of CCI against Subcontractor [Levco] or Subcontractor against CCI shall, at the option of CCI, be resolved by arbitration pursuant to the Construction Industry Arbitration Rules of the American Arbitration Association in effect on the date on which the demand for arbitration is made. Any such arbitration shall be held in Lake County, Ohio.

CCI argues that this is a valid arbitration agreement. However, Levco argues, both here and in the trial court, that the arbitration agreement in the Construction Contract is not valid because it is illusory.[2]

## D. Analysis of Levco's Claims that Abritration Provision is Illusory

 "A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex.2010) (orig. proceeding) (per curiam); *see also J.M. Davidson*, 128 S.W.3d at 235 (Schneider, J., dissenting) ("[I]f the terms of a promise make performance optional, the promise is illusory and cannot constitute valid consideration."). Arbitration agreements must be supported by consideration, or mutuality of obligation, to be enforceable. *Palm Harbor Homes*, 195 S.W.3d at 676; *Dorfman v. Max Int'l, LLC*, No. 05–10–00776–CV, 2011 WL 1680070, at *2 (Tex.App.-Dallas May 5, 2011, no pet.) (mem. op.).

 In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex.2005) (orig. proceeding) (per curiam); *Dorfman*, 2011 WL 1680070, at *2. When, however, an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration. *AdvancePCS Health*, 172 S.W.3d at 607; *see Palm Harbor Homes*, 195 S.W.3d at 676–77.

Here, the plain language of the arbitration provision does not mutually bind the parties because arbitration is "at the option of CCI." However, this arbitration provision does not stand alone—it is part of an underlying contract. Thus, consider-

---

**2.** CCI argues that we cannot consider Levco's arguments concerning termination of the agreement and subsequent performance under the terms of the Bond because it was not expressly presented to the trial court. This argument is unpersuasive. When, as here, no findings of fact and conclusions of law are filed by the trial court, we must affirm the trial court's order if any legal theory supports it. *Rachal v. Reitz*, 347 S.W.3d 305, 308 (Tex.App.-Dallas 2011, pet. filed). Levco, CCI, and the Surety all informed the trial court of the January 2011 termination by CCI and of the subsequent arrangements under the terms of the Bond, so the trial court was aware of this information.

ation, or the presence of mutual obligation, is provided by the underlying contract. *See AdvancePCS Health,* 172 S.W.3d at 607.

Levco seems to argue that the underlying contract does not provide any consideration for the arbitration provision because it, too, permits CCI to terminate, suspend, or modify its terms at its sole discretion, without notice. Levco's reliance on those provisions of the Construction Contract is misplaced. The modification provision's plain language does not state that CCI is the only party that can modify the agreement—it provides only that any modifications must be signed by CCI's representative to be effective. Furthermore, while the Construction Contract provides that termination or suspension will be "at the sole option and convenience to CCI," the contract also provides that CCI must pay for work and materials already purchased at the time it gives notice of such termination or suspension. Thus, the parties are bound by mutual obligations and the agreement is not illusory.

## E. Analysis of Levco's Termination and Savings Clause Argument

Levco also argues that CCI is complaining of work primarily completed after CCI terminated the Construction Contract and that the dispute resolution clause in the Construction Contract cannot survive the termination because it did not contain a savings clause.

■■■ "[A]n arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole." *Henry v. Gonzalez,* 18 S.W.3d 684, 690 (Tex.App.-San Antonio 2000, pet. dism'd) (relying, in context of TAA, on line of reasoning that agreement to arbitrate contained in written contract is separable from entire contract); *see also In re Koch Indus., Inc.,* 49 S.W.3d 439, 445 (Tex.App.-San Antonio 2001, orig. proceeding) (hold-

ing same in context of FAA). Thus, a savings clause was not required for the arbitration provision in the Construction Contract to survive any termination by CCI.

■■■ To the extent that Levco is attempting to argue that the dispute between the parties does not fall within the scope of the arbitration provision in the Construction Contract because some of the dispute between itself and CCI arose from work that was completed after CCI terminated the Construction Contract, this is also unavailing. The terms of the Bond expressly incorporate the terms of the Construction Contract. Section 4.1, the provision invoked by the Surety, allows it to "[a]rrange from the Contractor [Levco] . . . to perform and complete the Construction Contract." Section 6 of the Bond further states that if the Surety elects to act under section 4.1, "the responsibilities of the Surety to the Owner [CCI] shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract." Thus, the terms of the Bond expressly provided for Levco to complete the work under the terms of the Construction Contract even after CCI's termination of the contract.

We conclude that CCI proved, as a matter of law, the existence of a valid arbitration agreement and that the claims between it and Levco fall within the scope of that agreement. Thus, CCI is entitled to arbitrate these claims, and the trial court abused its discretion in refusing to enforce the arbitration proceedings. *See, e.g., Jack B. Anglin Co.,* 842 S.W.2d at 272–73 (recognizing, prior to enactment of Civil Practice and Remedies Code section 51.016, appropriateness of mandamus relief "[w]hen a Texas court enforces or re-

fuses to enforce an arbitration agreement pursuant to the [FAA]" because that party "would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated"); *see also In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998) (orig. proceeding) (holding there is no adequate remedy by appeal for denial of right to arbitration "because the very purpose of arbitration is to avoid the time and expense of a trial and appeal").

### FAA Preemption of State Law Venue Provision

Finally, Levco argues that we should "affirm the trial court's denial of [CCI's] Motion to Compel because the Texas Business and Commerce Code section 272.001 prohibits compelling Levco to arbitration in Lake County, Ohio and is not preempted by the [FAA]." It argues that the arbitration must take place in Harris County.

Business and Commerce Code section 272.001 provides:

> If a contract contains a provision making the contract or any conflict arising under the contract subject to another state's law, litigation in the courts of another state, or arbitration in another state, that provision is voidable by the party obligated by the contract to perform the construction or repair.

TEX. BUS. & COM.CODE ANN. § 272.001(b) (Vernon 2006). Levco argues in its appellate brief that it "exercised its option to void the requirement in the Contract to arbitrate in Lake County, Ohio" and, "[a]s a result, the trial court properly denied [CCI's] motion to compel arbitration in Lake County, Ohio." It further argues that if this Court narrowly construes the word "provision" to mean only the choice of venue rather than the arbitration clause

as a whole, this statute would not fall under the FAA's preemption provision.

 The FAA preempts all otherwise applicable inconsistent state laws, including any inconsistent provisions of the TAA, under the Supremacy Clause of the United States Constitution. U.S. CONST. art. VI; *see Allied–Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 272, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). The FAA declares written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006); *OPE Int'l LP v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 446 (5th Cir.2001). "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *OPE Int'l,* 258 F.3d at 446 (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.")).

In *OPE International,* the Fifth Circuit held that a Louisiana provision invalidating arbitration of certain disputes out-of-state was preempted by the FAA, on the ground that the statute "condition[ed] the enforceability of arbitration agreements on selection of a Louisiana forum; a requirement not applicable to contracts generally." *Id.* at 447; *see also Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d 334, 337 (5th Cir.1984) (holding that FAA preempted provisions in Texas Deceptive Trade Practices Act that required parties to submit to judicial forum).

We hold that the same reasoning applies here. Applying section 272.001 as Levco asks us to do here would prevent us from enforcing a term of the parties' arbitration agreement—the venue—on a ground that is not recognized by the FAA or by general state-law contract principles. *See OPE Int'l,* 258 F.3d at 447; *see also KKW Enters., Inc.,* 184 F.3d at 50 ("The venue in which arbitration is to take place is a 'term' of the parties' arbitration agreement."). We hold that the FAA preempts application of this provision under the facts of this case.

Levco argues that this case is distinguishable from *OPE International* because the Louisiana provision in *OPE International* "declare[d] null and void and unenforceable" any non-Louisiana venue provision, while section 272.001 declares such provisions only "voidable." However, by allowing a party to subsequently declare void a previously bargained-for provision, application of section 272.001 would undermine the declared federal policy of rigorous enforcement of arbitration agreements. *See Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 2526, 96 L.Ed.2d 426 (1987) (analyzing section 2 and holding that it embodies Congress' intent to provide for enforcement of arbitration agreements within full reach of the Commerce Clause" and that "[i]t's general applicability reflects that the preeminent concern of Congress ... was to enforce private agreements into which parties had entered").

### Conclusion

We reverse the order of the trial court and remand the case for further proceedings consistent with this opinion.