Opinion issued March 15, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00925-CV

———————————

Aspen Technology, Inc and David “Woody” Woodruff, Appellants

V.

Hank W.
Harrity, Appellee



 



 

On Appeal from the 125th District Court

Harris County, Texas



Trial Court Case No. 2011-39376

 



 

MEMORANDUM OPINION

Appellants, Aspen Technology, Inc. and
David Woodruff, appeal from the trial court’s denial of their motion to abate
the trial and compel arbitration.  In one
issue, Aspen Technology and Woodruff argue that the trial court erred in
denying their motion.

We reverse and remand.

                                                                                                       
Background

Hank Harrity, appellee, began
working for Aspen Technology in July 2001. 
As of July 1, 2008, he held the title of Senior Sales Account
Manager.  Effective that date, Harrity and Aspen Technology entered into a contract
entitled “FY09 Sales Incentive Compensation Plan.”

As the title suggests, the contract concerned the
compensation Harrity would receive for license and
service deals made on behalf of Aspen Technology.  In addition, the contract had an arbitration
provision.  The provisions of the
contract relevant to this appeal are the “Administration” provision in the
“Basic Terms” section of the contract, the “‘Windfall’ Circumstances” provision
in the “Plan Terms and Conditions” section of the contract, and the arbitration
provision itself.

The administration provision provides:

The Senior Vice President of Worldwide Sales and Business
Development (“SVP–WW Sales”) or [the Vice President of Worldwide Sales
Operations (“VP–Ops”)] may modify this Plan [defined as the FY09 Sales
Incentive Compensation Plan] from time to time or at any time.  The SVP–WW Sales or his designee shall have
final and binding authority to interpret or administer the Plan, and may make
any necessary interpretation or review at any time, including after the
Effective Period of the Plan.  No
modifications to Territory, quotas or any other element of the Plan shall take
effect unless and until approved by the VP–Ops. 
Likewise, any additional or modified terms of conditions between the
Plan Participant and the Company [defined as Harrity’s
employing Aspen Technology entity] shall not apply unless approved in writing
signed by the VP–Ops and the Plan Participant [defined as Harrity].

The windfall provision provides, in relevant part, “The
Company has the right to review and alter a Plan Participant’s Total Quota or
any component thereof at any time for any reason, including . . .
any other reason relating to the commercial success of the Company.”

The arbitration provision provides:

If a Plan Participant is a resident of the United States,
then any legal action brought in support of any claim pursuant to this Plan
shall be exclusively settled by arbitration in the City of Boston,
Massachusetts in accordance with the commercial arbitration rules of the
American Arbitration Association in a three-arbitrator panel, with all
arbitrator fees and expenses shared equally between the Company and the Plan
Participant.

Harrity resigned in October 2010
and filed suit against Aspen Technology and Woodruff—Aspen Technology’s Senior
Vice President of Regional Sales & Services for Americas—on June 30,
2011.  In the suit, Harrity
alleges that Aspen Technology paid him less than the full amount of the
commissions owed and brought a number of claims related to this issue.

Aspen Technology and Woodruff filed an answer and then
filed a motion to abate the trial court proceedings and compel
arbitration.  Following a hearing, the
trial court denied the motion.  This
appeal followed.

                                                                                           
Standard of Review

We review an order denying a motion to compel arbitration
under the Federal Arbitration Act[1]
(“FAA”) for an abuse of discretion.  Cleveland Constr., Inc. v. Levco Constr., Inc., No. 01-11-00530-CV, 2012 WL
246497, at *6 (Tex. App.—Houston [1st Dist.] Jan. 26,
2012, no pet.) (slip op.).  “Thus, in reviewing an order denying a motion
to compel arbitration under the FAA, we give deference to the trial court’s
determinations that are supported by evidence and we review de novo its legal
conclusions.”  Id.  Whether a contract is
valid and enforceable is a question of law and, accordingly, is reviewed de
novo.  In re Labatt Food Serv., L.P., 279
S.W.3d 640, 643 (Tex. 2009).  “A
trial court that refuses to compel arbitration under a valid and enforceable
arbitration agreement has clearly abused its discretion.”  In re Odyssey Healthcare, Inc., 310 S.W.3d 419, 422 (Tex. 2010).

                                                                                                               
Analysis

A party attempting to compel arbitration must first
establish that the dispute in question falls within the scope of a valid
arbitration provision.  J.M. Davidson, Inc. v.
Webster, 128 S.W.3d 223, 227 (Tex. 2003).  If the trial court finds a valid agreement,
the burden shifts to the party opposing arbitration to raise an affirmative
defense to enforcing arbitration.  Id. 
Although there is a strong presumption favoring arbitration, this
presumption arises only after the party seeking to compel arbitration proves
that a valid agreement exists.  Id. 


Harrity presented to the trial
court two reasons why he should not be required to arbitrate his claims.  First, he argued the arbitration provision is
invalid.  Second, he argued that,
regardless of whether the arbitration provision is enforceable, it does not
apply to his tort claims against Woodruff.

A.            
Validity of Arbitration Provision

There is no dispute that there is an agreement between the
parties, that the agreement contains an arbitration provision,
and that the arbitration provision is broad enough to cover at least some of Harrity’s claims, including all of Harrity’s
claims against Aspen Technology. 
Instead, Harrity disputes whether the
agreement is valid.  Harrity
argues the agreement is not valid because it is illusory.

In determining whether an agreement to arbitrate is valid
and enforceable under the FAA, we apply state-law principles governing the
formation of contracts.  In re Palm Harbor Homes, Inc.,
195 S.W.3d 672, 676 (Tex. 2006). 
“Arbitration agreements, like other contracts, must be supported by
consideration.”  Id.  If a party can
unilaterally avoid the agreement to arbitrate, it is illusory and unenforceable.  Id. at 677.  

Harrity argues the arbitration
provision is illusory due to language in the administration provision.  At issue is how two sentences in the
provision relate to each other.  The
first sentence in the provision states, “The Senior Vice President of Worldwide
Sales and Business Development (‘SVP–WW Sales’) or VP–Ops may modify this Plan
from time to time or at any time.”  The
last sentence in the provision states, “Likewise, any additional or modified
terms of conditions between the Plan Participant and the Company shall not
apply unless approved in writing signed by the VP–Ops and” Harrity.

The parties dispute how these sentences relate to each
other.  Harrity
argues that the first sentence controls the last sentence with the result that
the SVP–WW Sales and the VP–Ops have unilateral authority to modify any portion
of the contract at any time, while Harrity can only
modify it with company approval.  Aspen
Technology and Woodruff argue that the last sentence controls the first
sentence, with the result that the SVP–WW Sales and the VP–Ops are the only
agents for Aspen Technology that have authority to modify the contract but all
modifications must be agreed on by both the company and Harrity.

Because the parties offer conflicting interpretations of
the contract, we must determine whether the contract is ambiguous.  See Webster,
128 S.W.3d at 229. 
We begin by determining “whether it is possible to enforce the contract
as written, without resort to parol evidence.”  Id.  We review the entire contract, giving effect
to all the provisions so that none will be rendered meaningless.  Id.  We will avoid, whenever possible and proper,
a construction which is unreasonable, inequitable, and oppressive.  Frost
Nat’l Bank v. L & F Distribs., Ltd., 165
S.W.3d 310, 312 (Tex. 2005).  A contract
is unambiguous if it can be given a definite or certain legal meaning.  Webster,
128 S.W.3d at 229. 
If the contract is subject to two or more reasonable interpretations,
however, the contract is ambiguous, creating a fact issue on the parties’
intent.  Id.  

As an initial matter, we note that the trial court
specifically determined that Aspen Technology had a unilateral ability to
modify the contract.  It did not clarify
whether this determination is based on an unambiguous interpretation of the
contract or on a factual determination of the parties’ intent following a determination
of ambiguity.  Because we hold that the
contract is not ambiguous and did not give Aspen Technology unilateral
authority to modify the contract, either interpretation of the trial court’s
determination results in error.

A substantially similar contract was held to not be
ambiguous or illusory by the Fourteenth Court of Appeals.  Aspen Tech., Inc. v. Shasha, 253 S.W.3d
857 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  The contract in Shasha was Aspen Technology’s
fiscal year 2006 contract.  Id. at 859.  Under the 2006 contract, “the SVP Sales will
be responsible for the periodic review of the plan and may make revisions from
time to time.”  Id. at 862.  The contract also provided, that “[a]ny additional terms or conditions, or verbal or written agreements
between [Shasha] and [Aspen] will not apply unless
explicitly agreed to and approved in a signed writing by both the SVP Sales and
[Shasha].”  Id. at 863 (bracketed language in
original).

In that case, Shasha argued that
the contract was illusory because it allowed the SVP Sales to modify the
contract from time to time.  Id. at 862.  The court disagreed, holding that the
provision requiring a signed agreement between the parties on any additional
terms or conditions controlled and prevented Aspen Technology from having
unilateral authority to modify the contract. 
See id. at
863.

We hold that the similar language in the 2009 agreement
has the same effect.  Aspen Technology’s
proffered interpretation of the contract at issue—the SVP–WW Sales and the VP–Ops
are the only agents for Aspen Technology that have authority to modify the
contract but all modifications must be agreed on by both the company and Harrity—is a valid interpretation that gives effect to both
sentences.  See Webster, 128 S.W.3d at 229
(requiring courts to review entire contract, giving effect to all provisions so
that none will be rendered meaningless). 
Harrity’s proffered interpretation of the
contract—the SVP–WW Sales and the VP–Ops have unilateral authority to modify
any portion of the contract at any time, while Harrity
can only modify it with company approval—would result in an unreasonable,
inequitable, and oppressive interpretation of the contract.  See Frost
Nat’l Bank, 165 S.W.3d at 312 (requiring courts to avoid, whenever possible
and proper, construction which is unreasonable, inequitable, and
oppressive).  In fact, Harrity asks us to adopt his interpretation of the contract
specifically to have the arbitration provision rendered illusory based on that
provision’s application.  Because there
is another, more reasonable interpretation of the contract, we cannot accept
his interpretation of the contract.  See id. 


Harrity also argued before the
trial court that the windfall provision renders the entire contract
illusory.  The windfall provision gives
Aspen Technology the right to modify an employee’s quota “or any component
thereof at any time for any reason, including . . .
any other reason relating to the commercial success of the Company.”  Harrity argues that
this and other similar provisions in the contract rendered the entire contract
illusory and unenforceable.  Because this
argument applied to the contract as a whole and not the arbitration provision
specifically, however, it could not have been a basis for the trial court’s denial
of the motion to compel arbitration.

The Texas Supreme Court has recognized that there are two
types of challenges to an arbitration provision: “(1) a specific challenge to
the validity of the arbitration agreement or clause, and (2) a broader
challenge to the entire contract, either on a ground that directly affects the
entire agreement, or on the ground that one of the contract’s provisions is
illegal and renders the whole contract invalid.”  In re Labatt, 279 S.W.3d at 647–48.  While a court may consider the merits of the
first type of challenge, the second type of challenge can only be considered by
the arbitrator.  Id. at 648.  Because Harrity’s
argument concerning the windfall provision and other similar provisions concern
whether the contract as a whole is illusory rather than whether the arbitration
provision specifically is illusory, it could not have been a basis for the
trial court’s denial of the motion to compel arbitration.

We hold that the arbitration provision is not illusory.

B.            
Applicability of Harrity’s
tort claims against Woodruff.

Harrity argues that, because he
did not sign an arbitration agreement with Woodruff, his tort claims against
Woodruff are not subject to a valid arbitration provision.  All of Harrity’s
claims against Woodruff, though, relate to the commission Harrity
argues he is owed under the contract.

The arbitration provision in question requires arbitration
for “any legal action brought in support of any claim pursuant to this
Plan.”  When contracting parties agree to
arbitrate all disputes under or with respect to a contract, “they generally
intend to include disputes about their agents’ actions because, as a general
rule, the actions of a corporate agent on behalf of the corporation are deemed
the corporation’s acts.”  In re Vesta Ins. Grp.,
Inc., 192 S.W.3d 759, 762 (Tex. 2006). 
Parties to an arbitration agreement may not avoid arbitration “through
artful pleading, such as by naming individual agents of the party to the arbitration
clause and suing them in their individual capacity.”  In re Merrill
Lynch Trust Co. FSB, 235 S.W.3d 185, 188 (Tex.
2007).

Harrity did not bring any claim
against Woodruff only.  Instead, all of
the tort claims identify both Aspen Technology and Woodruff as liable
parties.  Harrity’s
negligent misrepresentation claim asserts both defendants supplied him with
“false information for the guidance of [Harrity] in
his business decisions and transactions.” 
Harrity’s fraud claim concerns alleged false
promises and representations for compensation in his work.  His breach of fiduciary duty concerns the
defendants allegedly compelling Harrity “to trust and
rely upon his superiors and co-workers.” 
Harrity does not allege any facts in his claim
for intentional infliction of emotional distress.  Instead, he only tracks the legal language
for the elements.  Accordingly, there is
no suggestion that any action taken by Woodruff to form the basis of this claim
was done in Woodruff’s individual capacity. 
Harrity’s negligence claim concerns a duty to
pay the commission he alleges is owed. 
Finally, Harrity’s “securing the execution of
a document by deception” claim concerns the execution of the contract in
question.

Each of these claims relate to the contract in question.  Furthermore, none of these actions identify
any action taken by Woodruff in his individual capacity as opposed to his
capacity as an agent for Aspen Technology. 
We hold that the arbitration provision applies to these claims.

We affirm Aspen Technology’s sole issue.

                                                                                                          
Conclusion

We reverse the order of the trial court and remand for
entry of an order staying the trial court proceedings and compelling
arbitration.

 

 

                                                                      Laura
Carter Higley

                                                                      Justice


 

Panel
consists of Chief Justice Radack and Justices Higley and Brown.











[1]         The arbitration provision in dispute
does not state whether it is governed by the FAA, Texas General Arbitration Act
(“TGAA”), or some other legal authority. 
Aspen Technology asserts that the provision is governed by the FAA, and Harrity does not challenge this.  Because the outcome of this appeal would be
the same under the FAA and the TGAA, we will cite to the FAA.  See Cleveland Constr., Inc. v. Levco Constr.,
Inc., No. 01-11-00530-CV, 2012 WL 246497, at *6 (Tex. App.—Houston [1st
Dist.] Jan. 26, 2012, no pet.) (slip op.) (holding interlocutory appeals under FAA and TGAA
reviewed for abuse of discretion); Tex. Cityview Care Ctr., L.P. v. Fryer, 227 S.W.3d 345, 351
(Tex. App.—Fort Worth 2007, pet. dism’d) (holding
courts generally apply ordinary state law principles of contract formation in
determination of whether arbitration agreement is valid under FAA or TGAA); see also In re D. Wilson Constr. Co.,
196 S.W.3d 774, 780 (Tex. 2006) (holding FAA preempts TGAA if TGAA imposes
enforceability requirement not found in FAA).