

In The

Court of Appeals

Seventh District of Texas at Amarillo

No. 07-07-00303-CV

GARY ZARS D/B/A GARY'S POOL & PATIO STORE, APPELLANT

V.

JEREMY AND BRANDI BROWNLOW, APPELLEES

On Appeal from the County Court at Law No. 1
Hays County, Texas
Trial Court No. 8877-C, Honorable Howard Warner, Presiding

June 28, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellees Jeremy Brownlow and Brandi Brownlow sued appellant Gary Zars d/b/a Gary's Pool and Patio Store for damages allegedly arising from the installation of a residential swimming pool and patio. After denying Zars' motion to compel arbitration the trial court entered a "death-penalty" sanction against Zars in the form of a default judgment. We will reverse the judgment and remand the case with instructions to the trial court to refer the case to arbitration and abate further case proceedings during the pendency of arbitration.

## Background

In their petition, the Brownlows allege during May 2004 they reached an agreement with Zars for the installation of a home swimming pool and construction of a patio. Zars installed a pool at the Brownlows' home, but they contend the work was not performed according to the agreement and Zars' representations. They accordingly brought suit against Zars in March 2005 alleging breach of contract, negligence, violations of the Deceptive Trade Practices Act, and fraud.

Zars answered and moved to compel arbitration based on a clause in a document entitled "swimming pool agreement." The trial court denied Zars' motion.

The subsequent pretrial period was punctuated by discovery disputes. Twice the trial court issued monetary sanctions against Zars. Then, on a motion for death-penalty sanctions, the trial court rendered judgment by default in favor of the Brownlows.

Zars filed a notice of appeal in June 2007. On a suggestion of Zars' bankruptcy filed in September 2007 we suspended the case.[1] In August 2012, Zars' case in bankruptcy was dismissed without a discharge. Later that month we reinstated this appeal.

## Analysis

In his second issue, Zars complains the trial court erred by not referring the case to arbitration.

---

[1] *See* Tex. R. App. P. 8.2. (effect of bankruptcy).

On May 10, 2004, Zars' employee and both the Brownlows signed the swimming pool agreement. The document identifies the Brownlows by name and address and refers to them as "owner." The following section is headed "swimming pool specifications." As completed it names the type ("FiberGlass Pools of Texas"), color and size of the pool. It lists other specifications and identifies by name various options and equipment with which the pool was to be equipped. Other entries merely refer to undescribed "plans," such as those reading "equipment run per plan" and "electric per plan." The space for "special job instructions" contains an entry reading "possible rock excavation 300.00 (sic) move on 150.00 hr after." The section ends with a statement of the total price and payment terms.

The next section of the agreement, headed "assignment of responsibility," lists eleven separate project tasks, and allocates the tasks between "Gary's" and the "owner." The tasks include "delivery, job supervision, excavation, sand, crane, set & level, set equipment, plumbing lines, complete backfill, electrical connections, [and] fill & start up." As completed, this agreement allocated all the listed tasks to Gary's. Immediately following the list of tasks is the statement, "See attached general conditions for details."

The agreement also contains a section entitled "Notes," in which the cost of the project is itemized. Its hand-written entries read: "Deposit 100% refundable contingent on financing before O.S.I.[2]  Pool Price $17,495.00 Decking $2000.00 Baby Lock $2500.00 Total Pool Budget $21.995 (sic) Deposit Check #4547 Financing-". Printed

---

[2] The abbreviation "O.S.I." appears twice in the hand-written entries on the agreement, but is not defined.

across the bottom of the page is the statement, "You may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. I have received the notice of cancellation form. I have also received a copy of the general conditions." Immediately following, beneath the heading "accepted by owner" appear the signatures of the Brownlows. To the right is the signature of Zars' employee.

The "General Conditions" are printed on the reverse of the one-page swimming pool agreement, and consist of eighteen numbered paragraphs. As an example of the conditions, the first paragraph provides that "work called for in this agreement shall be performed in a good and workmanlike manner and shall carry Gary's guarantee against defects in material and workmanship for one year from delivery." Other paragraphs elaborate on the responsibilities of the parties. As another example, one paragraph states, "Owner is responsible for any permits required." Another reads, "Pool equipment shall be located within twenty feet . . . of pool." The paragraph numbered seventeen is the arbitration clause:

> Any controversy or claim arising out of or relating to this contract or breach thereof or any claim whatsoever with Gary's including claims under the DTPA shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and Judgment on the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof. Any Arbitration between the parties shall be in Bexar County, Texas.

> In affidavits filed with their response to Zars' motion to compel arbitration, the

Brownlows each aver that an employee of Zars filled in the blanks on the swimming pool agreement and asked them to sign. They were not told of any terms on the reverse side of the document.

4

Texas procedure controls a trial court's determination of whether disputed claims fall within the scope of an arbitration clause. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 268 (Tex. 1992). Under our state's procedures, a trial court may decide a motion to compel arbitration based on summary judgment-type proof. *Id.* at 269. If the arbitrability determination cannot be made as a matter of law, "the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Id.*

We review a trial court's ruling on a motion to compel arbitration under an abuse of discretion standard. *Jack B. Anglin Co.,* 842 S.W.2d at 271; *Teel v. Beldon Roofing & Remodeling Co.,* 281 S.W.3d 446, 448 (Tex.App.--San Antonio 2007, pet. denied); *Cleveland Constr., Inc. v. Levco Constr., Inc.,* 359 S.W.3d 843, 851 (Tex.App.--Houston [1st Dist.] 2012, pet. dism'd). A trial court abuses its discretion when it acts arbitrarily or unreasonably and without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985). Review under this standard requires deference to the factual determinations of the trial court while legal determinations are reviewed *de novo. In re Labatt Food Serv.,* 279 S.W.3d 640, 643 (Tex.2009) (orig. proceeding).

A party seeking to compel arbitration must establish the existence of a valid arbitration clause and that the disputed claims fall within the scope of the agreement. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding) (under Federal Arbitration Act). If a party establishes a valid arbitration agreement whose scope includes the claims asserted, the burden shifts to the party opposing arbitration to prove its defenses to arbitration. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam).

The Brownlows argue the swimming pool agreement is not a contract because it fails to state with sufficient clarity the terms of any agreement among the parties and "is merely corroborating evidence of the existence of an oral contract, made on May 1, 2004 for a pool and patio." They focus on the sufficiency of the offer and point to a claimed absence of mutuality in the terms of the document.

A valid contract requires an offer, acceptance, and consideration. *Burges v. Mosley,* 304 S.W.3d 623, 629 (Tex.App.--Tyler 2010, no pet.). The terms of a legally binding contract must be of such definiteness that a court can understand the obligation the promisor undertook. *T. O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992). For a contract to be judicially enforceable, the parties must agree on the material terms of the contract. *Id.* "Whether a term forms an essential element of a contract depends primarily upon the intent of the parties. . . . The question is whether the parties regard the term as a vitally important ingredient of their bargain." *Domingo v. Mitchell,* 257 S.W.3d 34, 40-41 (Tex.App.--Amarillo 2008, pet. denied) (citations omitted). On acceptance, an offer results in a binding contract but if an offer is so indefinite that a court is unable to interpret its meaning and fix the liability of the parties its acceptance does not create an enforceable agreement. *Baldwin v. New,* 736 S.W.2d 148, 152 (Tex.App.--Dallas 1987, writ denied). An enforceable contract requires the parties mutually agree to the subject matter of the contract and all its essential terms. *Weynand v. Weynand,* 990 S.W.2d 843, 846 (Tex.App.--Dallas 1999, pet. denied). Generally, a party manifests assent by signing an agreement. *Rachal v. Reitz,* No. 11-0708, 2013 Tex. Lexis 348, at *12-13 (Tex. May 3, 2013) (citing *Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex. 2010)).

6

As we have noted, the swimming pool agreement identifies the parties, describes the swimming pool to be installed along with equipment and accessories, assigns responsibility for the installation and related tasks, itemizes the project cost along with a grand total, specifies payment terms, conditions the Brownlows' obligation on obtaining financing "before O.S.I.," and expressly signifies the Brownlows' acceptance by their signatures. Zars' employee signed it also. Notwithstanding the Brownlows' complaints that the document is a pre-printed form with hand-written entries and contains only three complete sentences, we find the substance of the document sufficiently definite and expressive of the intention of the parties.

Moreover, even were we to say the swimming pool agreement fails to legally memorialize an agreement for the installation of a swimming pool, the arbitration clause remains. Parties may create a valid stand-alone arbitration agreement. *In re AdvancePCS Health L.P.,* 172 S.W.3d at 607. A mutual agreement to arbitrate claims provides sufficient consideration for an arbitration agreement. *In re U.S. Home Corp.,* 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (per curiam). The parties here expressly agreed that all claims arising out of or relating to the agreement for installation of a swimming pool would be submitted to arbitration. This agreement bound both the Brownlows and Zars to arbitrate any disputes within the scope of the arbitration agreement. For this reason also, we find a valid arbitration clause existed among the parties.

In determining whether a claim is within the scope of an arbitration agreement, a court focuses on the factual allegations of the complainant rather than the legal cause of action asserted. *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex.1995)

7

(orig. proceeding) (per curiam). "If the facts alleged touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement, the claim is arbitrable." *Cotton Commercial USA, Inc. v. Clear Creek ISD,* 387 S.W.3d 99, 108 (Tex.App.--Houston [14th Dist.] 2012, no pet.) (internal quotation marks omitted) (citing *Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 498 (Tex.App.--San Antonio 2000, orig. proceeding)). But "[i]f the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Cotton Commercial,* 387 S.W.3d at 108 (citing *Pennzoil,* 30 S.W.3d at 498). A court resolves doubts concerning the scope of an arbitration agreement in favor of arbitration. *In re FirstMerit Bank,* 52 S.W.3d 749, 753, (Tex. 2001) (orig. proceeding). A motion to compel arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir. 1990). Broad language in an arbitration clause, such as "in connection with or relating to," embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute. *Pennzoil Exploration & Prod. Co. v. Ramco Energy,* 139 F.3d 1061, 1067 (5th Cir. 1998).

Through detailed factual allegations, the Brownlow's petition alleges Zars failed to install a swimming pool and patio according to written and oral representations. Included are complaints of substandard workmanship and installation of inferior goods. The allegations of fact concern conduct arising out of or relating to the parties'

8

agreement for installation of a swimming pool and patio. We find the conduct alleged comes within the scope of their arbitration agreement.

If a party seeking arbitration satisfies its initial burden of proving the existence of an agreement to arbitrate, then a strong presumption favoring arbitration arises, and the burden shifts to the party opposing arbitration to prove any affirmative defense to the agreement. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). Thus it was for the Brownlows to present something more than a scintilla of evidence on each element of any affirmative defense they possessed. The Brownlows argue that Zars through his employee fraudulently induced them into the swimming pool project "by, among other things, obscuring the existence of the arbitration clause." According to the affidavits of the Brownlows, Zars' employee asked them to sign the swimming pool agreement without mentioning or showing them the reverse side.

This does not amount to evidence raising an issue of material fact. By signing the swimming pool agreement, the Brownlows acknowledged receipt of the general conditions. Condition seventeen is the arbitration agreement. And there is no evidence that anyone prevented them from reading both sides of the swimming pool agreement they signed. A court presumes a party who has an opportunity to read an arbitration agreement and signs it, knows its contents. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding) (per curiam). As is true of any clause in a contract, an arbitration clause cannot be avoided merely because a party does not read it. *In re U.S. Home Corp.,* 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (per curiam). The conduct alleged here does not constitute fraud. *Id.*

9

Finding Zars established a valid arbitration clause and the Brownlows did not demonstrate an issue of fact on their fraudulent inducement defense, we sustain Zars' second issue.

Denial of his motion to compel arbitration had the effect of depriving Zars of the benefits of the arbitration clause for which he contracted, and of defeating the purpose of providing the alternative to litigation. *See Jack B. Anglin Co.,* 842 S.W.2d at 272 (finding remedy for such error by appeal inadequate and mandamus available). In that sense, the trial court's error in denying referral to arbitration may be said to have "probably caused the rendition of an improper judgment," requiring reversal. *See* Tex. R. App. P. 44.1(a) (standard for reversible error). If additional reason for reversing the judgment is required, however, we find it in Zars' first issue, by which he contends the death-penalty sanction assessed by the court was excessive.

In February 2007, the Brownlows filed a pleading entitled "Plaintiffs' Request for Judgment." Therein they alleged a history of discovery abuse and contumacious conduct by Zars. Although not stated expressly, it appears the Brownlows sought a death-penalty sanction against Zars in the form of a default judgment. *See* Tex. R. Civ. P. 215.2(b)(5).

The March 2007 hearing on the Brownlows' motion for judgment was brief. Counsel for the Brownlows presented by argument a chronological history of Zars' asserted discovery abuses. This began with failure to respond to a request for disclosure and request for production in May 2005. An unspecified sanction was entered and the requested documents produced. The Brownlows served a second

request for production of documents during November 2005. Zars made no response. At an October 2006 hearing, the trial court ordered Zars to produce the requested documents by November 30. It also imposed a $1,600 monetary sanction. Zars neither paid the sanction nor produced any documents.

Neither side offered evidence at the hearing, although in his argument counsel for the Brownlows referenced affidavits attached to the motion for judgment. Counsel for Zars objected to the affidavits as containing hearsay, conclusory statements, and unqualified expert opinions. The court overruled the objections. At the conclusion of the hearing, the court rendered judgment on the Brownlows' motion. The same day it signed a judgment awarding the Brownlows actual damages of $37,000 and attorney's fees of $15,000.

A sanction must be just. Tex. R. Civ. P. 215.2(b). The justness of a sanction is measured by two standards: "First, a direct relationship must exist between the offensive conduct and the sanction imposed." *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991). "Second, just sanctions must not be excessive. The punishment should fit the crime." *Id.*

For failure to comply with a discovery request or order, civil rule 215.2(b)(5) offers a trial court sanctions of last resort, commonly known as death-penalty sanctions. *Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 372 S.W.3d 177, 179 (Tex. 2012). The available remedies include striking all or a portion of pleadings, dismissing the action with or without prejudice, or rendering a default judgment against the disobedient party. Tex. R. Civ. P. 215(b)(5). The merits of a party's claims may not be adjudicated through

11

discovery sanctions unless the party's hindrance of the discovery process justifies a presumption that his claims or defenses lack merit. *TransAmerican,* 811 S.W.2d at 918. The presumption may appropriately arise if a party refuses to produce material evidence despite the imposition of lesser sanctions. *Id.* "Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.*

The unusual nature of this case leads us to conclude death-penalty sanctions were excessive. We have already found the trial court erred in not referring the case to arbitration as Zars requested. The discovery dispute that followed turned on Zars' refusal to answer written discovery requests. Discovery such as authorized by our rules of civil procedure is not available under the rules of the American Arbitration Association, the dispute resolution service to which the parties expressly agreed to submit their disputes. *See* American Arbitration Association Construction Industry Arbitration Rules (providing at Rule F-9, "There shall be no discovery, except as provided [through the exchange of information procedure of Rule F-8] or as ordered by the arbitrator in exceptional cases").[3]

While Zars' persistent noncompliance with discovery orders may have justified a lesser sanction, a matter on which we express no opinion, we must conclude the trial court abused its discretion by imposing a sanction that precluded presentation of the

---

[3] *See* www.adr.org/aaa/faces/aoe/cre/construction

merits of the case when it should previously have referred the case to arbitration. Accordingly, we sustain Zars' first issue.

By his third issue, Zars asserts the damages awarded by the trial court are not supported by the evidence, and by his fourth issue he contends the trial court should not have considered the affidavits of the Brownlows and their attorney.[4] We find consideration of those issues unnecessary to the disposition of the appeal. Tex. R. App. P. 47.1.

Conclusion

We reverse the judgment of the trial court and remand the case with instructions to refer the case to arbitration and abate the case during the pendency of arbitration.


James T. Campbell
Justice

---

[4] With regard to the third and fourth issues, we note, however, that the trial court did not strike Zars' answer. It is unclear whether, under the analysis in *Paradigm Oil*, 372 S.W.3d at 184, the hearing on the Brownlows' motion for judgment would be considered under the standard for a no-answer or a post-answer default judgment.