ACCEPTED
01-15-00194-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/6/2015 1:40:06 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00194-CV
IN THE COURT OF APPEALS
FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/6/2015 1:40:06 PM
CHRISTOPHER A. PRINE
Clerk

**AN LUXURY IMPORTS, L.T.D. d/b/a BMW OF DALLAS, AN LUXURY IMPORTS GP., LLC and UNITED STATES WARRANTY CORP.**
**APPELLANTS**

**TRIAL COURT NO. 2014-33551**

**VS.**

**D. SCOTT SOUTHALL**
**APPELLEE**

On Appeal from the 295th District Court
Of Harris County, Texas

**BRIEF OF APPELLANTS AN LUXURY IMPORTS, L.T.D. d/b/a BMW OF DALLAS, AN LUXURY IMPORTS GP., LLC and UNITED STATES WARRANTY CORP.**

JOHNSON, DeLUCA, KURISKY & GOULD
A Professional Corporation
4 Houston Center, Suite 1000
1221 Lamar Street
Houston, Texas  77057
(713) 652-2525 – Telephone
(713) 652-5130 – Facsimile

GEORGE A. KURISKY, JR.
SBT No.: 11767700
DANIEL J. KASPRZAK
SBT No.:  11105300
MARK A. BANKSTON
SBT No.: 24001430

ATTORNEYS FOR APPELLANTS
**AN LUXURY IMPORTS, L.T.D.**
**d/b/a BMW OF DALLAS, AN LUXURY IMPORTS GP., LLC**
**and UNITED STATES WARRANTY CORP.**

# IDENTITIES OF PARTIES AND COUNSEL

The following is a complete list of names and addresses of all parties to the trial court proceeding and their counsel:

Appellants:                AN Luxury Imports, Ltd d/b/a BMW of Dallas
                           AN Luxury Imports GP, LLC
                           United States Warranty Corp.

Appellants' Counsel:       George A. Kurisky, Jr.
                           Daniel J. Kasprzak
                           Mark A. Bankston
                           Johnson DeLuca Kurisky & Gould P.C.
                           1221 Lamar Street
                           Suite 1000
                           Houston, Texas 77010

Appellee:                  D. Scott Southall

Appellee's Counsel         Victor S. Elgohary
                           6406 Arcadia Bend Ct.
                           Houston, Texas 77041

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ....................................................... iii

TABLE OF CONTENTS.......................................................................................iv

INDEX OF AUTHORITIES..................................................................................vi

STATEMENT OF THE CASE..............................................................................1

REQUEST FOR ORAL ARGUMENT ..................................................................3

ISSUES PRESENTED...........................................................................................3

STATEMENT OF FACTS .....................................................................................4

PROCEDURAL FACTS ........................................................................................6

SUMMARY OF ARGUMENT ..............................................................................8

STANDARD OF REVIEW ..................................................................................10

ARGUMENT AND AUTHORITIES..................................................................12

    1.    The Trial Court Erred by Denying Arbitration Because Southall and BMW of Dallas Agreed to Submit Disputes to Arbitration and the Claims Asserted Against the Defendants are Within the Scope of the Arbitration Agreement………………………………………………12

        (A)    The Arbitration Agreement Between Southall and BMW of Dallas is a Valid Contract.......................................................14

            (1) All Contract Signed by Southall Must be Considered Together Because They Pertain to the Same Transaction of Purchasing the Vehicle .......................................................16

            (2) Southall's Arguments Regarding the Forum Selection Clause are not Persuasive.........................................................18

(3) The Arbitration Agreement Governs Southall's Claims Against U.S. Warranty ...................................................22

(B) Southall's Claims are Within the Scope of the Arbitration Agreement ...................................................................28

(1) Southall's Warranty Claims are Subject to the Arbitration Agreement .............................................................30

(2) Southall's Fraud and Non-Disclosures are Subject to the Arbitration Agreement .......................................................31

CONCLUSION ...............................................................................................33

PRAYER ........................................................................................................33

CERTIFICATE OF COMPLIANCE ............................................................35

CERTIFICATE OF SERVICE .....................................................................35

# INDEX OF AUTHORITIES

**Cases**

*Aldridge v. Thrift Financial Marketing, LLC*, 376 S.W.3d 877, 882
(Tex. App.—Fort Worth 2012, no pet.)...................................................................11

*Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270-71 (1995)....................14

*Ascendant Anesthesia PLLC v. Abazi,* 348 S.W.3d 454, 462
(Tex. App.—Dallas 2011, no pet.)........................................................................27

*Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001).................13

*Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996) .......... 14, 15, 21, 22

*Citigroup Global Markets, Inc. v. Brown,* 261 S.W.3d 394, 399
(Tex. App.—Houston [14th Dist.] 2008, no pet. h.)..............................................11

*Cleveland Const., Inc. v. Levco Const., Inc.*, 359 S.W.3d 843, 852
(Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) .......................... 11, 12, 13, 15

*Cotton Commercial USA, Inc. v. Cleark Creek Indep. School Dist.*, 397 S.W.3d 99,
103 n. 3 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ........................... 10, 13

*Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 217 (1985).......................... 10, 26, 27

*Enterprise Field Services, LLC v. TOC-Rocky Mountain, Inc*., No. 01–12–00345–
CV, 2013 WL 744006, at *1, n. 1 (Tex. App.—Houston [1st Dist.] Feb. 28,
2013, pet. filed)......................................................................................................13

*EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex. 1996)..................................14

*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n. 9 (Tex. 2008) .......................11

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000)
...............................................................................................................................22

*Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312
(Tex.2005) (per curiam)........................................................................20

*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991) ........................14

*Grant Thornton LLP v. Prospect High Income Fund*,
314 S.W.3d 913, 919-20 (Tex. 2010) ...............................................32

*Helena Chemical Co. v. Wilkins,* 18 S.W.3d 744, 750
(Tex. App.—San Antonio 2000) *affm'd* 47 S.W.3d 486 (Tex. 2001)..................26

*Howsan v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) .............................14

*In re Bank One,* 216 S.W.3d 825, 826 (Tex. 2007).....................................................28

*In re Certain Underwriters at Lloyd's,* 18 S.W.3d 867, 875-76
(Tex. App.—Beaumont 2000, no pet.) ...............................................26

*In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex. 2005)................11

*In re D. Wilson Constr.,* 196 S.W.3d 774, 781 (Tex. 2006)....................................28

*In re Dallas Peterbilt, Ltd.,* 196 S.W.3d 161, 163 (Tex. 2006)...............................28

*In re Dillard Dept. Stores,* 186 S.W.3d. 514, 515 (Tex. 2006) ...............................28

*In re FirstMerit Bank,* 52 S.W.3d 749, 753 (Tex. 2001).........................................14

*In re Kaplan Higher Educ. Corp.,* 235 S.W.3d, 206, 208 & n.1 (Tex. 2007).........28

*In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) (orig.
proceeding) .................................................................................12

*In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009) .................. 11, 26, 28

*In re Prudential,* 159 S.W.3d at 283...........................................................27

*In re Rubiola,* 334 S.W.3d 220, 224 (Tex. 2011) ....................................................28

*J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003)................... 12, 20

*Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992) ......................27

*Kaye/Bassman Intern. Corp. v. Help Desk Now, Inc.,* 321 S.W.3d 806, 813
  (Tex. App.—Dallas 2010, pet. denied) ................................................................20

*Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38
  (Tex. App.—Houston [1st Dist.] 2009, pet. denied) .............................................11

*Pennzoil Coc. v. Arnold Oil Co.,* 30 S.W.3d 494, 498
  (Tex. App.—San Antonio 2000, orig. proceeding) ...............................................28

*Prudential Secs. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex. 1995).....................28

*Schlumberger Tech. Corp. v. Baker Hughes, Inc.*, 355 S.W.3d 791, 800
  (Tex. App.—Houston [1st Dist.] 2011, no pet.) ................................................... 11

*Smith v. National Resort Cmty., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979) ...............32

*Speedemissions, Inc. v. Bear Gate,* LP, 404 S.W.3d 34, 41
  (Tex.App. – Houston [1st Dist.] 2013, no pet.) ......................................... 15, 24, 25

*Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex. 1998).........................................13

*Texas Petrochemicals LP v. ISP Water Management Services LLC*,
  301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.) ........................ 15, 27

*The Courage Co., L.L.C. v. The Chemshare Corp.,* 93 S.W.3d 323, 333
  (Tex. App.—Houston [14th Dist.] 2002, no pet.)..................................................22

*Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir. 2006).........................................14

*Young v. Villegas*, 231 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2007, pet.
  denied) ..................................................................................................................13

STATUTES

9 U.S.C. § 1 ........................................................................................13

9 U.S.C. § 16 ......................................................................................13

9 U.S.C. § 16(a)(1)(C) .......................................................................14

9 U.S.C. § 206 ....................................................................................14

9 U.S.C. § 32 ......................................................................................14

TEX. BUS. & COM. CODE § 17.01 .......................................................32

TEX. CIV. PRAC. & REM. CODE § 51.016 ....................................... 10, 13

TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 ............................... 10, 13

SECONDARY SOURCES

Restatement 2nd of TORTS § 552 .........................................................32

## STATEMENT OF THE CASE

This case arises out of the December 19, 2013 purchase of a 2007 Porsche Cayman, VIN #WPOAB29847U781868 (the "Vehicle"). Appellee, D. Scott Southall, ("Southall") purchased the Vehicle from AN Luxury Imports, LTD d/b/a BMW of Dallas, Inc. ("Appellant" or "BMW of Dallas") on December 19, 2013. At the time of purchase, Southall signed several documents, including an Arbitration Agreement (the "Arbitration Agreement"), and a Used Vehicle Limited Mechanical Warranty (the "Warranty Agreement"), as part of the single agreement to buy the Vehicle.

Southall alleges that on February 7, 2014, fifty days after the purchase, "the engine in the Cayman suffered a severe mechanical breakdown when it threw a piston rod in one of the cylinders during a trip to Austin, Texas." (Cl. R. at p. 6). Southall alleges that he attempted to make a claim for repairs under the terms of the Warranty Agreement. (*Id.*) Southall alleges that United States Warranty Corp. ("U.S. Warranty"), the Administrator for the Warranty Agreement, inspected the Vehicle and denied the claim, stating that the mechanical failure was caused by racing or other competition. (*Id.*) Southall alleges that his mechanic inspected the Vehicle and determined that the Vehicle's motor had "fatally exceeded its maximum allowable RPM prior to his acquisition of the vehicle." (*Id.*)

1

Southall asserts claims for (1) breach of contract (Cl. R. at p. 6), (2) unfair settlement practices (Cl. R. at p. 7), (3) breach of the duty of good faith and fair dealing (Cl. R. at p. 8), (4) violations of the Texas Deceptive Trade Practices Act (Cl. R. at pp. 8 – 9), (5) negligence (Cl. R. at p. 9), (6) fraud by nondisclosure (Cl. R. at p. 10), and (7) negligent misrepresentation (Cl. R. at pp. 10 -11). Southall also seeks to impute liability to AN Luxury Imports GP, LLC ("ANLI," and with BMW of Dallas and U.S. Warranty, collectively "Defendants"), asserting that ANLI is the general partner of BMW of Dallas, and therefore liable for the partnership's debts. (Cl. R. at P. 11).

BMW of Dallas and ANLI answered the suit on July 23, 2014, asserting a general denial and a number of affirmative defenses subject to its right to compel arbitration. (Cl. R. at pp. 13 – 18). On August 5, 2014, BMW of Dallas and ANLI moved to compel arbitration and to stay or dismiss the lawsuit. (Cl. R. at pp. 19 - 36). U.S. Warranty answered the suit on August 25, 2014. On September 10, 2014, U.S. Warranty joined BMW of Dallas and ANLI in filing a supplement to the Motion to Compel Arbitration and to stay or dismiss the lawsuit. (Cl. R. at pp. 98-100). On October 27, 2014, the trial court conducted a hearing on the Defendants' Motion to Compel Arbitration. On February 9, 2015, the trial court entered an order denying the Defendants' Motion to Compel Arbitration. (Cl. R. at p. 130). It is from this order denying arbitration signed on February 9, 2015, that

BMW of Dallas, along with its affiliates, ANLI, and U.S. Warranty, take this appeal. Defendants respectfully request that this Court reverse the trial court's order and compel arbitration because Southall and BMW of Dallas agreed to submit any disputes to arbitration and order that the claims asserted against BMW of Dallas, ANLI, and U.S. warranty fall within the scope of the Arbitration Agreement.

## REQUEST FOR ORAL ARGUMENT

Appellants request oral argument because some of the legal issues made the basis of this brief are complex and concern matters of important public policy, the holding of this case is potentially far-reaching and could affect myriad future lawsuits.

## ISSUES PRESENTED

**I. THE TRIAL COURT ERRED BY DENYING ARBITRATION BECAUSE SOUTHALL AND BMW OF DALLAS AGREED TO SUBMIT DISPUTES TO ARBITRATION AND THE CLAIMS ASSERTED AGAINST THE DEFENDANTS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT**

    **(A) The Arbitration Agreement Between Southall and BMW of Dallas is a Valid Contract**

        **(1) All Contracts Signed by Southall Must Be Considered Together Because They Pertain to the Same Transaction of Purchasing the Vehicle**

        **(2) Southall's Arguments Regarding the Forum Selection Clause are not Persuasive**

       **(3)**    **The Arbitration Agreement Governs Southall's Claims against U. S. Warranty**

**(B)**    **Southall's Claims are Within the Scope of the Arbitration Agreement**

       **(1)**    **Southall's Warranty Claims are Subject to the Arbitration Agreement**

       **(2)**    **Southall's Fraud and Non-Disclosures are Subject to the Arbitration Agreement**

## STATEMENT OF FACTS

BMW of Dallas is a retailer of new and used vehicles in Dallas, Texas. (Cl. R. at p. 33). BMW of Dallas is a limited partnership in which ANLI is the general partner. (Cl. R. at pp. 44-45).

On or about December 19, 2013, BMW of Dallas sold the Vehicle to Southall. (Cl. R. at p. 3). Incident to the sale, Southall executed several documents that were part of a single transaction (the "Purchase Contract"), including without limitation, (a) Retail Purchase Agreement (the "Sale Agreement"); (b) the Arbitration Agreement; and (c) the Used Vehicle Limited Mechanical Warranty (the "Warranty Agreement"). (Cl. R. at pp. 28-31; 32; 64-65). The Arbitration Agreement specifically states that it is subject to the Federal Arbitration Act. (Cl. R. at p. 32).

The Arbitration Agreement signed contemporaneously with the other closing documents provides in pertinent part:

4

This Arbitration Agreement ("Agreement") applies to Customer(s) ("you") who is/are in the process of: (1) purchasing or leasing a vehicle(s) including any negotiations or application(s) for credit or other dealings or interactions with the Dealership (hereinafter including its employees, agents, successors, assigns, subsidiaries, parents and affiliates); (2) servicing any vehicle(s) with the Dealership; or (3) reviewing, negotiating or executing any documents or agreements during the course of interactions with the Dealership (collectively, "Customer(s)/Dealership Dealings"). **You and the Dealership agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively, "Claims") that either Party has arising from Customer(s)/Dealership Dealings.** Such Claims include, but are not limited to, the following: (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) **Claims relating to any representations, promises, undertakings, warranties, covenants or service**; (3) Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; (4) Claims between you and Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Customer(s)/Dealership Dealings, or **any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings**.

(Cl. R. at p. 32). (emphasis added).

The Sale Agreement references the Arbitration Agreement, stating "**If you have signed an arbitration agreement, it is incorporated into and made a part of this agreement for all purposes**" and "**If You have executed an Arbitration Agreement in conjunction with this Agreement such Arbitration Agreement**

5

**shall be incorporated herein by reference and made a part of this Agreement."** (Cl. R. a pp. 30 and 31).

Southall claims that he did not request service on the Vehicle from BMW of Dallas. (Cl. R. at p. 40). This lawsuit is premised on the alleged obligation and failure of BMW of Dallas to repair Vehicle. If Southall did not ask BMW of Dallas to make repairs to the Vehicle, his claims are not ripe.

Southall alleges that on February 2, 2014, the Vehicle's engine suffered a severe mechanical breakdown during a trip to Austin, Texas. (Cl. R. at p. 6). Southall alleges that the engine threw a piston rod in one of the cylinders. (*Id.*).

Southall alleges that he informed U.S. Warranty of his claim. (Cl. R. at p. 6). He further alleges that an adjuster acting on behalf of U.S. Warranty inspected the Vehicle in Houston, Texas. (*Id.*). Southall alleges that "BMW of Dallas, through its agent U.S. warranty, denied the claim stating that the breakdown was caused by racing or other competition." (*Id.*).

## PROCEDURAL FACTS

On or about June 11, 2014, Southall filed a lawsuit in the 295th District Court of Harris County Texas, asserting claims for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act, negligence, fraud by nondisclosure, and negligent misrepresentation. (Cl. R. at pp. 4-12). On July 23,

2014, BMW of Dallas and ANLI answered the suit subject to compelling arbitration. (Cl. R. at pp. 13-18). BMW of Dallas and ANLI's answer included a paragraph stating that the claims against them were subject to an arbitration agreement and demanded arbitration. (Cl. R. at p. 13).

On August 5, 2014, BMW of Dallas and ANLI moved to compel arbitration and for the stay or dismissal of the lawsuit. (Cl. R. at pp. 19-36). On August 24, 2014, Appellant filed a response to the Motion to Compel Arbitration. (Cl. R. at pp. 37 – 68). In his response, Appellant argued that (1) the purchase agreement provides that exclusive venue and jurisdiction lies in the courts of the county in which the dealer is located and that there is no evidence that the Arbitration Agreement "ties to" the Retail Purchase Agreement; read together, the agreements should be construed as giving the Appellant an option to bring a claim in the forum of his choosing (Cl. R. at pp. 38-40); and (2) Appellants complaint is based on the Defendants' alleged failure to perform under the Used Vehicle Limited Mechanical Warranty, which has no arbitration provision and is therefore outside the scope of the Arbitration Agreement. (Cl. R. at pp. 40-41). On August 25, 2014, Defendants filed their reply and amended reply in support of the Motion to Compel Arbitration. (Cl. R. at pp. 68-76 and 77-85). On August 25, 2014, Defendants also filed a Response to Motion to Sever Subject to Motion to Compel Arbitration and Supplement to Motion to Compel Arbitration. (Cl. R. at pp. 86-97).

7

On August 25, 2014, U.S. Warranty answered the lawsuit, subject to compelling arbitration. On September 10, 2014, U.S. Warranty joined BMW of Dallas and ANLI in a supplemental Motion to Compel Arbitration. (Cl. R. at pp. 98-100). On October 24, 2014, Appellant filed a response to the supplemental motion to compel arbitration, arguing that (1) the claims against U.S. Warranty are not subject to arbitration because U.S. Warranty is not a party to the Arbitration Agreement; and (2) the claims against U.S. Warranty are not subject to arbitration because there is no evidence that U.S. Warranty is an affiliate of BMW of Dallas. (Cl. R. at pp. 101-129).

On October 27, 2014, the trial court conducted a hearing on the Defendants' Motion to Compel Arbitration. The trial court did not rule on the Motion to Compel Arbitration at the October 27, 2014, hearing. On February 2, 2015, the trial court entered an order denying Defendants' Motion to Compel Arbitration. (Cl. R. at p. 130).

## SUMMARY OF ARGUMENT

The trial court erred by denying Defendant's Motion to Compel Arbitration because Southall and BMW of Dallas agreed to submit disputes, such as the instant case, to arbitration and Southall's claims in this case are within the scope of the Arbitration Agreement. Because Southall and BMW of Dallas executed the Arbitration Agreement at the time of sale of the Vehicle as part of one sales

8

transaction and intended to submit any dispute between them to arbitration, a valid agreement to arbitrate exists.

All claims asserted by Southall fall within the scope of the Arbitration Agreement because they are expressly encompassed within the terms of the Arbitration Agreement. Each of Southall's causes of action are based on one of two contentions: (1) Defendants have not fulfilled their duties under the Warranty Agreement by repairing the Vehicle, or (2) BMW of Dallas had prior knowledge of the condition of the Vehicle's engine, had a duty to disclose that condition, and failed to do so. The Arbitration Agreement expressly and unambiguously includes claims relating to warranties and claims relating to representations within its scope of claims.

U.S. Warranty is not a signatory to the Arbitration Agreement. (Cl. R. at p. 32). The claims asserted by Southall against U.S. Warranty are factually intertwined with the claims asserted against BMW of Dallas and ANLI. In fact, the claims are identical. Additionally, the Warranty Agreement, Arbitration Agreement and the Sale Agreement were all signed as components of one transaction and must be read together. Southall agreed to arbitrate his claims against U.S. Warranty. Moreover, Southall seeks to assert rights and retain benefits under the Warranty Agreement and Sale Agreement, but wishes to avoid

application of the Arbitration Agreement. Southall is equitably estopped from doing this.

Even if the claims against U.S. Warranty cannot be compelled to arbitration, the Court must order the claims against BMW of Dallas and ANLI to arbitration. The Supreme Court of the United States made it clear that the Federal Arbitration Act requires arbitrable claims to be compelled to arbitration, even where the result would be "the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 217 (1985). Therefore, the trial court's order denying arbitration of the Southall's claims must be reversed. If the parties or this Court wish to avoid piecemeal litigation, this Court can order all claims asserted against the collective Defendants to be arbitrated together.

The Court has jurisdiction to consider this interlocutory appeal of the trial court's denial of the Motion to Compel Arbitration pursuant to TEX. CIV. PRAC. & REM. CODE § 51.016 because the Arbitration Agreement is governed by the FAA.

## STANDARD OF REVIEW

Interlocutory review of a trial court's order denying arbitration under the Federal Arbitration Act ("FAA") is allowed under Texas law. TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012); *Cotton Commercial USA, Inc. v. Clear Creek Indep. School Dist.*, 397 S.W.3d 99, 103 n. 3 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The Texas Civil Practice and Remedies Code now

10

provides for the interlocutory appeal of a trial court's denial of a motion to compel arbitration under the FAA."); *Cleveland Constr., Inc. v. Levco Constr., Inc.*, 359 S.W.3d 843, 850–51 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (same).

A trial court's denial of a motion to compel arbitration is generally reviewed for an abuse of discretion. *Schlumberger Tech. Corp. v. Baker Hughes, Inc.*, 355 S.W.3d 791, 800 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (*citing Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts. *Citigroup Global Markets, Inc. v. Brown,* 261 S.W.3d 394, 399 (Tex. App.—Houston [14th Dist.] 2008, no pet. h.) (*citing In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex. 2005). However, "[w]hen an appeal from a denial of a motion to compel arbitration turns on a legal determination," a *de novo* standard is applied. *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n. 9 (Tex. 2008); *Schlumberger Tech Corp.*, 355 S.W.3d at 800. Both the validity and enforceability of an arbitration agreement are questions of law and subject to *de novo* review. *Aldridge v. Thrift Financial Marketing, LLC*, 376 S.W.3d 877, 882 (Tex. App.—Fort Worth 2012, no pet.) (validity); *In re Labatt Food Service, L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (enforceability).

A party seeking to compel arbitration must establish that there is a valid arbitration agreement and that the claims raised fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) (orig. proceeding); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003); *Cleveland Constr.,* 359 S.W.3d at 852. Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson,* 128 S.W.3d at 227; *Cleveland Constr.,* 359 S.W.3d at 852. Ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Kellogg Brown & Root,* 166 S.W.3d at 738; *Cleveland Constr.,* 359 S.W.3d at 852.

## ARGUMENT & AUTHORITIES

**I. THE TRIAL COURT ERRED BY DENYING ARBITRATION BECAUSE SOUTHALL AND BMW OF DALLAS AGREED TO SUBMIT DISPUTES TO ARBITRATION AND THE CLAIMS ASSERTED AGAINST THE DEFENDANTS ARE WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT**

The trial court erred by denying Defendants' Motion to Compel Arbitration because Southall and BMW of Dallas agreed to submit disputes, such as the instant case, to arbitration and Southall's claims in this case are within the scope of the Arbitration Agreement. The Court has jurisdiction to consider this interlocutory appeal of the trial court's denial of the Motion to Compel Arbitration pursuant to

12

TEX. CIV. PRAC. & REM. CODE § 51.016 because the Arbitration Agreement is governed by the FAA.

Under Texas law, "[i]nterlocutory orders are not appealable unless explicitly made so by statute." *Young v. Villegas*, 231 S.W.3d 1, 5 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Stary v. DeBord*, 967 S.W.2d 352, 352–53 (Tex. 1998)). Statutes authorizing interlocutory appeals must be strictly construed. *Young*, 231 S.W.3d at 5 (citing *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 355 (Tex. 2001)). In this case, Section 51.016 of the Civil Practice and Remedies Code provides:

> In a matter subject to the Federal Arbitration Act (9 U.S.C. Section 1 et seq.), a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012) (emphasis added). As evidenced by the plain language of section 51.016 and established precedent, a person may appeal an order denying arbitration if it would be allowed under 9 U.S.C. § 16." *See id.*; *Cotton Commercial USA, Inc.*, 397 S.W.3d at 103, n. 9; *Cleveland Constr., Inc.*, 359 S.W.3d at 850-51; *Enterprise Field Services, LLC v. TOC-Rocky Mountain, Inc.*, No. 01–12–00345–CV, 2013 WL 744006, at *1, n. 1 (Tex. App.—Houston [1st Dist.] Feb. 28, 2013, pet. filed). Under 9 U.S.C.

13

§ 16, an appeal may be taken from an order denying an application to compel arbitration. 9 U.S.C. § 16(a)(1)(C); *see also* 9 U.S.C. § 206. Because the subject matter of this interlocutory order concerns the FAA and an appeal would be allowed under federal law, this court has proper jurisdiction pursuant to section 51.016 of the Civil Practice and Remedies Code.

### (A) The Arbitration Agreement Between Southall and BMW of Dallas is a Valid Contract

Federal and state law strongly favors arbitration. *In re FirstMerit Bank,* 52 S.W.3d 749, 753 (Tex. 2001); *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex. 1996); *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996). The FAA applies to all contracts involving interstate commerce and was enacted to overcome courts' reluctance to enforce arbitration agreements. *See* 9 U.S.C. § 32; *Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270-71 (1995). The FAA establishes a strong federal policy in favor of enforcing arbitration agreements. *Howsan v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991). Indeed, a presumption exists in favor of agreements to arbitrate under the FAA. *Cantella,* 924 S.W.2d at 944. **Courts must resolve any doubts about an agreement to arbitrate in favor of arbitration.** *Id*. *(emphasis added)*; *Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir. 2006). A party opposing arbitration bears the burden of defeating it. *Cantella,* 924 S.W.2d at 944. An arbitration agreement is valid and enforceable if an

14

arbitration agreement exists and the claims asserted are within the scope of the agreement. *Speedemissions, Inc. v. Bear Gate, LP*, 404 S.W.3d 34, 41 (Tex.App. – Houston [1st Dist.] 2013, no pet.); *Texas Petrochemicals LP v. ISP Water Management Services LLC*, 301 S.W.3d 879, 884 (Tex. App.—Beaumont 2009, no pet.). Once a party seeking to compel arbitration establishes that an arbitration agreement exists and that the claims are within the scope of the arbitration agreement, the court has no discretion but to compel arbitration and stay its proceedings pending arbitration. *Cantella*, 924 S.W.2d at 944.

In this case, Southall and BMW of Dallas executed an Arbitration Agreement at the time of sale. (Cl. R. at p. 32). Ordinary principles of state contract law determine whether there is a valid agreement to arbitrate. *Cleveland Const., Inc. v. Levco Const., Inc.*, 359 S.W.3d 843, 852 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). The elements of a valid contract are (a) an offer, (b) an acceptance, (c) a meeting of the minds, (d) each party's consent to the terms, and (e) execution and delivery of the contract with the intent that it be mutual and binding. *Id*. "Under generally accepted principles of contract interpretation, all writings that pertain to the same transaction will be considered together, even if they were executed at different times and do not expressly refer to one another." *Id*. at 853.

15

**(1) All Contracts Signed by Southall Must Be Considered Together Because They Pertain to the Same Transaction of Purchasing the Vehicle**

On December 19, 2013, Southall and BMW of Dallas executed the (a) Sale Agreement; (b) the Arbitration Agreement; (c) the Warranty Agreement. (Cl. R. at pp. 28-31, 32, and 64-65).

The Arbitration Agreement signed contemporaneously with the other closing documents provides in pertinent part:

> This Arbitration Agreement ("Agreement") applies to Customer(s) ("you") who is/are in the process of: (1) purchasing or leasing a vehicle(s) including any negotiations or application(s) for credit or other dealings or interactions with the Dealership (hereinafter including its employees, agents, successors, assigns, subsidiaries, parents and affiliates); (2) servicing any vehicle(s) with the Dealership; or (3) reviewing, negotiating or executing any documents or agreements during the course of interactions with the Dealership (collectively, "Customer(s)/Dealership Dealings"). **You and the Dealership agree that arbitration will be the sole method of resolving any claim, dispute, or controversy (collectively, "Claims") that either Party has arising from Customer(s)/Dealership Dealings.** Such Claims include, but are not limited to, the following: (1) Claims in contract, tort, regulatory, statutory, equitable, or otherwise; (2) **Claims relating to any representations, promises, undertakings, warranties, covenants or service**; (3) Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; (4) Claims between you and Dealership; and (5) Claims arising out of or relating to your application for credit, this Agreement and/or any and all documents executed, presented or negotiated during Customer(s)/Dealership Dealings, or **any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties**

16

**who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings**.

(Cl. R. at p. 32). (emphasis added).

The Sale Agreement references the Arbitration Agreement, stating **"If you have signed an arbitration agreement, it is incorporated into and made a part of this agreement for all purposes" and "If You have executed an Arbitration Agreement in conjunction with this Agreement such Arbitration Agreement shall be incorporated herein by reference and made a part of this Agreement."** (Cl. R. at pp. 30 and 31).

Similarly, the Sale Agreement references the Warranty Agreement, stating **"USED VEHICLE LIMITED WARRANTY APPLIES. We are providing the attached Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties are limited in duration to the terms of the Used Vehicle Limited Warranty".** (Cl. R. at p. 30).

The Sale Agreement also states "The provisions of this Agreement shall survive the consummation of Your purchase of the Vehicle." (Cl. R. at p. 31).

The closing documents signed at the time of sale between Southall and BMW of Dallas constitutes a valid contract because they meet the requirements of the general contract law of Texas. BMW of Dallas accepted Southall's offer to buy the Vehicle at the price set forth in the Retail Purchase Agreement, subject to the additional terms and conditions contained in the contemporaneously executed

documents. The terms of the sale were clearly set forth in the sales documents. Both parties demonstrated their consent to the sale by executing the sales documents. There was a meeting of the minds on all terms and conditions of the sale of the Vehicle, as evidenced by the sales documents. The sales documents were delivered to Southall along with the Vehicle with the intent that they be mutual and binding. **Southall continues to acknowledge that the Sale Agreement and the Purchase Agreement are parts of the same transaction, and has offered sworn testimony to that effect on two separate occasions, stating:**

> "On December 19, 2013, I purchased a 2007 Porsche Cayman VIN #WPOAB29847U781868 ("Porsche") from BMW of Dallas. **As part of my purchase, I also received a Used Vehicle Limited Mechanical Warranty** through United States Warranty Corp. on the vehicle."

(Cl. R. at pp. 66 and 128) (emphasis added).

Because Southall and BMW of Dallas executed the Arbitration Agreement and Warranty Agreement at the time of the sale of the Vehicle as part of one sales transaction, a valid agreement to arbitrate exists.

### (2) Southall's Arguments Regarding the Forum Selection Clause are not Persuasive

Southall's arguments against compelling arbitration in this case are without merit. Southall argues Paragraph 17 of the Sale Agreement provides for exclusive venue and jurisdiction, precluding the Court from compelling Southall to arbitrate.

(Cl. R. at p. 38).  The Sale Agreement addresses arbitration as an alternative means of resolving disputes.  The forum selection clause cannot be read to eradicate BMW of Dallas's rights to compel arbitration.

Appellant cites to Paragraph 17 of the Sale Agreement, which states in part:

> The sole and exclusive venue for any dispute or litigation arising under or concerning this Agreement shall be in the courts located in and for the county in which Dealer is located, and the parties irrevocably consent to the jurisdiction of said courts.

(Cl. R. at pp. 31 and 38).  From this provision, Appellant argues that Southall and BMW of Dallas intended to give "the courts" sole and exclusive jurisdiction over a dispute arising under the contract, and that the courts of Harris County provide a proper venue because ANLI is owned by a corporation that is owned by another corporation that "has over 10 locations in Harris County."  (Cl. R. at p. 39).  Appellant then contends that there is no evidence tying the Arbitration Agreement to the Sale Agreement.  (*Id.*).

There is no conflict between the Arbitration Agreement and the Sale Agreement.  The first page of the Sale Agreement expressly incorporates the Arbitration Agreement into the Sale Agreement.  (Cl. R. at p. 30).  Paragraph 10, on the second page of the Sale Agreement also incorporates the Arbitration Agreement by reference.  (Cl. R. at p. 31).  Appellant selectively quoted Paragraph 17.  The **remainder of Paragraph 17**, states:

19

> Any and all arbitration proceedings shall also take place in the county where the dealer is located, unless agreed otherwise by the parties. This Agreement shall be construed and governed by the laws of the state in which Dealer is located. In the event of any dispute or litigation arising under this Agreement, the prevailing party shall be entitled to recover its costs and expenses including court costs and reasonable attorney's fees.

(Cl. R. at p. 31). Upon reading <u>all</u> of the Sale Agreement and <u>all</u> of Paragraph 17, it is readily apparent that Southall and BMW of Dallas did not intend to give the courts of the State of Texas (in the county most convenient for Southall) exclusive jurisdiction over disputes arising from Southall's Purchase Contract.

Even if there were conflicting language in the Sale Agreement and the Arbitration Agreement, which Defendants dispute, the Court must ascertain the true intentions of the parties as expressed in the written instruments. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The Court must consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *J.M. Davidson*, 128 S.W.3d at 229. When the provisions of a contract appear to conflict, courts attempt to harmonize the provisions and assume the parties intended every provision to have some effect. *Kaye/Bassman Intern. Corp. v. Help Desk Now, Inc.,* 321 S.W.3d 806, 813 (Tex. App.—Dallas 2010, pet. denied). Courts must resolve any doubts about an agreement to arbitrate in favor

of arbitration. *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex. 1996). From the plain language of the Sale Agreement and the Arbitration Agreement in this case, it is clear that the parties intended there to be one contract for the sale of the Vehicle – not several separate contracts that can be interpreted apart from one another as Southall urges.

Southall's position is illogical and would render meaningless the writings because the closing documents work hand-in-hand. The Sale Agreement is the conditional sales contract in which Southall offered to purchase the Vehicle, while the Arbitration Agreement provides that all disputes arising out of Southall's dealings with the dealership are to be submitted to binding arbitration. The Warranty Agreement is a third portion of the overall Purchase Contract. The three documents are indispensable parts of the Purchase Contract and cannot be severed in the manner advocated by Southall.

It is clear from the language of the Arbitration Agreement that Southall and BMW of Dallas intended to submit any disputes arising out of the Purchase Contract to binding arbitration. The forum selection provision in the Sale Agreement governs only if Southall and BMW of Dallas had not agreed to submit all disputes to Arbitration. This is the only sensible construction in light of the terms of the three Agreements.

Because the trial court abused its discretion by failing to resolve any doubts about the language of the various contract documents in favor of arbitration, the Court should reverse the trial court's order denying arbitration.

### (3) The Arbitration Agreement Governs Southall's Claims against U. S. Warranty

Appellant next argues that the Warranty Agreement does not contain an arbitration provision, precluding the Court from compelling Southall to arbitrate his claims against U.S. Warranty.

It is well established that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other. *The Courage Co., L.L.C. v. The Chemshare Corp.,* 93 S.W.3d 323, 333 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (*citing Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex.2000)). A court may determine, as a matter of law, that multiple documents comprise a written contract, and in appropriate instances, may construe all the documents as if they were part of a single, unified instrument. *Id.* (*citing Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840). As demonstrated above, courts must resolve any doubts about an agreement to arbitrate in favor of arbitration. *Cantella & Co.,* 924 S.W.2d at 944. Southall and BMW of Dallas executed the Arbitration Agreement on the same day as the Sale Agreement and Warranty Agreement as a single transaction whereby Southall

purchased the Vehicle. The Arbitration Agreement provides that it covers "(1)

**purchasing or leasing a vehicle(s)** including any negotiations or application(s) for

credit or other dealings or interactions with the Dealership; (2) **servicing any**

**vehicle(s) with the dealership**; and reviewing, negotiating or executing any

documents or agreements during the course of interactions with the Dealership."

(Cl. R. at p. 32) (emphasis added). The Arbitration Agreement further states:

> You and the Dealership agree that **arbitration will be the sole method of resolving any claim, dispute, or controversy** (collectively, "Claims") that either Party has arising from Customer(s)/Dealership Dealings. Such Claims include, but are not limited to, the following: (1) Claims in **contract, tort, regulatory, statutory, equitable, or otherwise**; (2) **Claims relating to any representations, promises, undertakings, warranties, covenants or service**; (3) Claims regarding the interpretation, scope, or validity of this Agreement, or arbitrability of any issue; (4) Claims between you and the Dealership; and (5) Claims arising out of or relating to your application for credit, **this Agreement and/or any and all documents executed, presented or negotiated during the Customer(s)/Dealership Dealings**, or any resulting transaction, service, or relationship, including that with the Dealership, **or any relationship with third parties who do not sign this Agreement that arises out of the Customer(s)/Dealership Dealings**.

(Cl. R. at p. 32) (emphasis added).

It is clear from the language of the Arbitration Agreement that Southall and

BMW of Dallas intended to submit any disputes arising out of, *inter alia,* the Sale

Agreement, the Warranty Agreement and/or the Arbitration Agreement to binding

arbitration. Because the trial court erred by resolving any doubts about the language of the various contract documents against arbitration, the Court should reverse the trial court's order denying arbitration.

Southall cites to *Speedemissions, Inc. v. Bear Gate, L.P.* for support for his contention that he cannot be compelled to arbitrate his claims against U.S. Warranty because U.S. Warranty is not a signatory to the Arbitration Agreement. *See Speedemissions, Inc. v. Bear Gate, L.P.*, 404 S.W.3d 34 (Tex.App. – Houston [1st Dist.] 2013); (Cl. R. at p. 103).

*Speedemissions* is readily distinguishable from this case. Speedemissions, Inc. sought to purchase a business in Houston, Texas, Mr. Sticker, Inc. *Speedemissions, Inc.*, 404 S.W. 3d at 37. Mr. Sticker owned and operated six vehicle inspection stores. *Id.* Mr. Sticker owned the land and improvements on which two of the stores operated. *Id.* Speedemissions Inc. did not wish to purchase the land and improvements. *Id.* Prior to the sale of Mr. Sticker's stock, Mr. Sticker's owners formed a limited liability company and a limited partnership. *Id.* The limited liability company was made the managing partner of the partnership. *Id.* Then the land and improvements in question were transferred from Mr. Sticker to the limited partnership. *Id.* Speedemissions, Inc. entered into a stock purchase agreement with Mr. Sticker, and separate lease agreements with the limited partnership. *Id.* The stock purchase agreement contained an arbitration

24

provision. *Speedemissions, Inc.*, 404 S.W.3d at 38. The lease agreements did not. *Speedemissions, Inc.*, 404 S.W.3d at 40. The stock purchase agreement did not reference the lease agreements. *Speedemissions, Inc.*, 404 S.W.3d at 39. The lease agreement did not reference the stock purchase agreements. *Id.* The lease agreements had a term of five years and provided Speedemissions, Inc. the option of renegotiating and renewing the leases for an additional five years. *Id.* At the end of the initial lease period, Speedemissions, Inc. and the limited partnership did not successfully renegotiate the leases. *Speedemissions, Inc.*, 404 S.W.3d at 40. Speedemissions, Inc. instituted arbitration against the limited partnership, which was dismissed on the request of the limited partnership. *Id.* Speedemission, Inc. then filed suit against the limited partnership and moved to compel arbitration. *Id.* The trial court denied the request, which generated an appeal. *Id.* In affirming the trial court's order, this Court stated:

> "The language of the Stock Purchase Agreement and Lease Agreements demonstrates that the parties intended for these agreements to be complete, separate agreements. The Stock Purchase Agreement and the Lease Agreements are between different parties. They each have a distinct and separate purpose. And they were not executed as part of a single stock purchase and sale/leaseback agreement."

*Speedemissions, Inc.*, 404 S.W.3d at 43.

In this case, the Sale Agreement, Arbitration Agreement and Warranty Agreement are all between the same parties, Southall and BMW of Dallas. (Cl. R.

25

at pp. 28-31, 32, and 64-65). Each Agreement was executed as part of one transaction; the sale of the Vehicle.

More importantly, the Arbitration Agreement specifies that the parties agree to arbitrate claims against each other as well as claims against third parties who are not signatories to the Arbitration Agreement. (Cl. R. at p. 32). **U.S. Warranty did not sign the Arbitration Agreement and did not agree to arbitrate Southall's claims. Southall did sign the Arbitration Agreement. Southall did agree to arbitrate his claims against U.S. Warranty.**

Whether an arbitration agreement binds a nonsignatory is a gateway matter for the court, not the arbitrator, to determine, unless the parties clearly and unmistakably provide otherwise. *In re Labatt Food Service, L.P.*, 279 S.W.3d 640 (Tex. 2009). The parties must arbitrate any claims that fall within the scope of the arbitration agreements, even though piecemeal litigation might result. *Helena Chemical Co. v. Wilkins,* 18 S.W.3d 744, 750 (Tex. App.—San Antonio 2000) *aff'd* 47 S.W.3d 486 (Tex. 2001) (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220–21 (1985)); *In re Certain Underwriters at Lloyd's,* 18 S.W.3d 867, 875-76 (Tex. App.—Beaumont 2000, no pet.) ("Even when arbitrable and non-arbitrable claims are intertwined and arise out of the same transaction, the arbitrable claims are still subject to arbitration.") Recent cases have held that claims that are not otherwise arbitrable can become arbitrable when factually

26

intertwined with arbitrable claims. *Ascendant Anesthesia PLLC v. Abazi,* 348 S.W.3d 454, 462 (Tex. App.—Dallas 2011, no pet.) (*citing Texas Petrochemicals LP v. ISP Water Mgmt. Servs. LLC,* 301 S.W.3d 879, 885 (Tex. App.—Beaumont 2009, no pet.); *see also Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 271 (Tex. 1992) (holding misrepresentation claims grounded in a legal theory distinct from contract claims yet factually intertwined are subject to the arbitration provision of the contract). "To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re Prudential*, 159 S.W.3d at 283.

In this case, U.S. Warranty is not a signatory to the Arbitration Agreement, but Southall's claims against U.S. Warranty are factually intertwined with his claims against the other defendants. Even if the Court chooses not to compel Southall's claims against U.S. Warranty to arbitration, the Supreme Court of the United States has made it clear that the FAA requires arbitrable claims to be compelled to arbitration, even where the result would be "the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds,* 470 U.S. at 217. Therefore, the trial court's order denying arbitration of Southall's claims must be reversed. If the parties or this Court wish to avoid piecemeal litigation, this Court can order all of Southall's claims to be arbitrated together.

**(B)    Southall's Claims are Within the Scope of the Arbitration Agreement**

The party moving for arbitration must show that the claim falls within the scope of the arbitration agreement. *In re Rubiola,* 334 S.W.3d 220, 224 (Tex. 2011); *In re Dallas Peterbilt, Ltd.,* 196 S.W.3d 161, 163 (Tex. 2006); *In re Dillard Dept. Stores,* 186 S.W.3d. 514, 515 (Tex. 2006); *Prudential Secs. Inc. v. Marshall,* 909 S.W.2d 896, 900 (Tex. 1995). To determine whether the claim is within the scope of the arbitration agreement, the court examines the terms of the agreement and the factual allegations of the plaintiff's claim. *See In re Rubiola,* 334 S.W.3d at 225. Generally, federal law governs the scope of the arbitration agreement. *In re Labatt Food,* 279 S.W.3d 640, 643 (Tex. 2009).

Many arbitration agreements provide that "any controversy or claim arising from or relating" the contract is subject to arbitration. *E.g., In re Kaplan Higher Educ. Corp.,* 235 S.W.3d, 206, 208 & n.1 (Tex. 2007); *In re Bank One,* 216 S.W.3d 825, 826 (Tex. 2007). Under a broad arbitration clause, arbitration can be compelled even though the particular dispute is not specifically covered. *See In re D. Wilson Constr.,* 196 S.W.3d 774, 781 (Tex. 2006). If the facts alleged in support of the claim have a "significant relationship" to or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim is within the scope of the agreement and is arbitrable. *Pennzoil Coc. v. Arnold Oil Co.,* 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding).

The claims asserted by Appellee are within the scope of the Arbitration Agreement because his claims relate to representations, warranties, and service. For Plaintiff to argue that he did not ask BMW of Dallas to service the Vehicle is disingenuous at best. This majority of this lawsuit centers on Southall's alleged damages because the Vehicle has not been repaired. Southall acknowledges making a "claim" to U.S. Warranty for the repair of the Vehicle. (Cl. R. at p. 6). The Warranty Agreement requires that any repair made under its coverage be made at BMW of Dallas or any other ANIL dealership. (Cl. R. at p. 65). The remainder of Southall's claims are based on his assertion that the Vehicle's engine had been subjected to abuse before he purchased the Vehicle, that BMW of Dallas somehow knew that the engine had been subjected to such abuse, and was therefore damaged, and that BMW of Dallas had a duty to disclose this information to him but failed to do so. (Cl. R. at pp. 6, and 9).

Additionally, Southall's argument that he was not in the process of purchasing or leasing a vehicle or reviewing, negotiating or executing any documents or agreements, and thus not within the scope of the Arbitration Agreement is defeated by the plain language of the Sale Agreement. The Sale Agreement, which incorporates the Arbitration Agreement, states "The provision of this Agreement shall survive the consummation of Your purchase of the Vehicle". (Cl. R. at p. 31). This provision evidences a meeting of the minds and

29

creates an enforceable right in BMW of Dallas to compel the arbitration of Southall's claims, even after he completed his purchase.

### (1) Southall's Warranty Claims are Subject to the Arbitration Agreement

Southall alleges that he acquired a Used Vehicle Limited Mechanical Warranty when he purchased the Vehicle. (Cl. R. at p. 5). He alleges that shortly after his purchase, the Vehicle experienced a severe mechanical breakdown. (Cl. R. at p. 6). He alleges that he informed U.S. Warranty of his claim, and that U.S. Warranty's claims adjuster denied his claim stating that the breakdown was caused by racing. (*Id.*).

On the above allegations, Southall asserts claims for (1) breach of contract, (2) unfair settlement practices, (3) breach of the duty of good faith and fair dealing, (4) violations of the Texas Deceptive Trade Practices Act, and (5) negligence.

The Arbitration Agreement specifically contemplates each of these causes of action. The Arbitration Agreement states that it applies to Customers who are in the process of purchasing a vehicle. (Cl. R. at p. 32). It was in the course of purchasing the Vehicle that Southall executed this agreement. The Arbitration Agreement states that Southall and BMW of Dallas agree to arbitrate any claim, dispute or controversy that either party has that arises from their course of dealing. (*Id.*). Specifically enumerated among the claims subject to arbitration, by way of example only, are "Claims in contract, tort, regulatory, statutory, equitable, or

otherwise" and "Claims relating to any representations, promises, undertakings, warranties, covenants or service", and "Claims arising out of or relating to… any resulting transaction, service, or relationship, including that with the Dealership, or any relationship with third parties who do not sign this agreement..." (*Id.*).

As demonstrated above, and by the trial court's record, the Arbitration Agreement is very broad. The Arbitration Agreement specifically mandates the arbitration of claims arising out of alleged breaches of the Purchase Contract, including the Warranty Agreement. Every cause of action asserted by Southall that is based on BMW of Dallas' refusal to repair the Vehicle is subject to mandatory arbitration. The Court should overrule the trial court's order denying Defendants' Motion to Compel Arbitration, and order that all of Southall's are subject to mandatory arbitration.

### (2) Southall's Fraud and Non-Disclosures are Subject to the Arbitration Agreement

Southall alleges that after the Vehicle's engine failed, Southall's mechanic inspected the Vehicle. During that inspection, Southall allegedly learned that the Vehicle's engine had "fatally exceeded its maximum allowable RPM prior to his acquisition of the vehicle." (Cl. R. at p. 6). Southall further alleges that BMW of Dallas knew of the Vehicle's prior misuse and the condition of its engine and failed to disclose the information to Southall. (Cl. R. at p. 9).

31

On these allegations, Southall asserts causes of action for (1) violation of the Texas Deceptive Trade Practices Act, (2) fraud by nondisclosure, and (3) negligent misrepresentation. (Cl. R. at pp. 9-11). These claims are levied solely against BMW of Dallas.

Once again, the express terms of the Arbitration Agreement mandate that these claims must be resolved through Arbitration. The nondisclosures of which Southall complains allegedly occurred while he was in the process of "purchasing or leasing a vehicle(s) including any negotiations or application(s) or other dealings or interactions with the Dealership". (Cl. R. at p. 32). The Deceptive Trade Practices Act is a statutory claim. TEX. BUS. & COM. CODE § 17.01 *et seq.* Fraud by nondisclosure is a common law tort claim. *See. Smith v. National Resort Cmty., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979) (citing Restatement 2nd of Torts § 551 (1977), which addresses liability for nondisclosure under the common law). Negligent misrepresentation is also a common law tort claim. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 919-20 (Tex. 2010) (citing Restatement 2nd of Torts, § 552 (1977), which addresses liability for negligent misrepresentation under the common law). The Arbitration Agreement names tort claims and statutory claims as claims subject to mandatory arbitration. (Cl. R. at p. 32). The Arbitration Agreement also identifies claims relating to any representations or promises as subject to mandatory arbitration. The Court should

32

overrule the trial court's order denying Defendants' Motion to Compel Arbitration, and order that all of Southall's are subject to mandatory arbitration.

## CONCLUSION

The trial court's order denying arbitration should be reversed because Southall and BMW of Dallas agreed to submit disputes, such as the instant case, to arbitration and Southall's claims in this case are within the scope of the Arbitration Agreement. Southall's claims against U.S. Warranty fall within the scope of the Arbitration Agreement because the Arbitration Agreement expressly provides that claims against third party are subject to arbitration if they arise as a result of Southall's dealings with BMW of Dallas. Additionally, Southall's claims against U.S. Warranty are factually intertwined with his claims against BMW of Dallas. Even if Southall's claims against U.S. Warranty cannot be compelled to arbitration (and they can), the arbitrable claims must be compelled to arbitration even if the result is piecemeal litigation.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, AN LUXURY IMPORTS, L.T.D. d/b/a BMW OF DALLAS, AN LUXURY IMPORTS GP., LLC and UNITED STATES WARRANTY CORP. respectfully pray that this Court reverse the Order of the trial court denying arbitration dated February 9, 2015, and grant

33

Defendants such and further relief, both general and special, at law or in equity, to which it may show itself to be justly entitled.

Respectfully submitted,

**JOHNSON DELUCA KURISKY & GOULD, P.C.**

By: /s/ George A. Kurisky, Jr.
     GEORGE A. KURISKY, JR.
     SBT No: 11767700
     DANIEL J. KASPRZAK
     Texas Bar No. 11105300
     MARK A. BANKSTON
     SBT No.: 24001430
     4 Houston Center
     1221 Lamar Street, Suite 1000
     Houston, Texas 77010
     (713) 652-2525 - Telephone
     (713) 652-5130 - Facsimile

**ATTORNEYS FOR APPELLANTS, AN LUXURY IMPORTS, L.T.D. d/b/a BMW OF DALLAS, AN LUXURY IMPORTS GP., LLC and UNITED STATES WARRANTY CORP.**

## CERTIFICATE OF COMPLIANCE

As required by Rule 9.4, Texas Rules of Appellate Procedure, the undersigned certifies that this brief contains 7,140 words, exclusive of the portions described in Rule 9.4(i)(1).

/s/George A. Kurisky, Jr.
George A. Kurisky, Jr.

## CERTIFICATE OF SERVICE

I certify that on the 6th day of April, 2015, a true and correct copy of the foregoing document was forwarded as indicated to all counsel of record listed below:

***Via email: victor@vselgohary.com***
***and U.S. Mail***
Victor S. Elgohary
6406 Arcadia Bend Ct.
Houston, Texas 77041
*Counsel for Plaintiff, D. Scot Southall*

/s/ Mark A. Bankston
Mark A. Bankston